927 A.2d 586

COMMONWEALTH of Pennsylvania, Appellee,

v.

Anthony WASHINGTON, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 23, 2003.

Decided July 18, 2007.

700

Stuart Brian Lev, Esq., James H. Moreno, Esq., Philadelphia, for Anthony Washington.

Amy Zapp, Esq., Hugh J. Burns, Jr., Esq., Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice BAER.[1]

Anthony Washington (Appellant) appeals from an Order of the Court of Common Pleas of Philadelphia County (PCRA Court) dismissing his Petition for Post–Conviction Relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. For the reasons set forth herein, we find that the PCRA court properly denied Appellant relief and affirm.

### Facts and Procedural History

The background underlying Appellant's conviction for first-degree murder and death sentence is set forth in *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400 (1997). Briefly, the killing occurred on January 23, 1993, when Appellant and his co-defendant Derrick Teagle drove to a Sav–A–Lot supermarket in Philadelphia with the intention of robbing it. Both men were armed with handguns, but Teagle's was not functioning due to a broken firing mechanism. After pretending to be customers, Appellant and Teagle left the store, only to return a few minutes later. Teagle pointed his gun at the store manager, Anne Marie Buchanan, and Appellant ordered her to open the store's safe. Meanwhile, Teagle went to empty the cash register. When Juana Robles, a customer,

---

1. This case was reassigned to this author.

attempted to leave the store, Appellant pointed his gun at her and ordered her not to leave.

Tracey Lawson, the store's unarmed security guard, was in the parking lot while the robbery was taking place. When he noticed what was going on inside, he pulled down the metal grate that secures the front entrance to the store. Appellant and Teagle were able to escape under the grate as it was coming down, and entered the parking lot. Lawson went into a nearby store and alerted the store's manager and the security guard, Gerard Smith, who was an off-duty Philadelphia police officer. All three men ran into the parking lot after Appellant and Teagle, where Officer Smith ordered the fleeing men to halt. As Appellant and Teagle fled, Appellant fired his weapon at Officer Smith, who fired back. Lawson began to chase after Appellant. When he saw Lawson pursuing him, Appellant turned and fired, hitting Lawson in the head. Appellant and Teagle then fled the scene in a get-away car. Lawson died in the hospital three days later.

Teagle eventually surrendered to police and gave a statement regarding the incident. Appellant was not apprehended until April 19, 1993. Teagle and Appellant were tried jointly.[2] The Commonwealth presented the eyewitness testimony of Ms. Robles and Officer Smith, who had identified Appellant from a photo array and at a line-up. Further, the Commonwealth presented the testimony of two sisters, Martha and Melissa Harrington, who were dating Appellant and his friend Levon Robinson. The sisters' testimony revealed that Appellant confessed to the shooting of Lawson to each of them on separate occasions. Melissa Harrington also testified that during a prison visit, Appellant instructed her to lie at his trial. Appellant's brother, Elijah Washington, also testified that on the night of the murder, Appellant asked him to take Teagle home because police might be looking for Appellant

**2.** Teagle was convicted of second-degree murder, robbery, simple assault, possessing an instrument of crime, and criminal conspiracy, and sentenced to life in prison plus ten to twenty years. On appeal, the Superior Court affirmed. *Commonwealth v. Teagle,* 455 Pa.Super. 660, 686 A.2d 1368 (1996).

and Teagle. Appellant's defense theory was mistaken identity.

On October 11, 1994, a jury found Appellant guilty of first-degree murder, robbery, simple assault, possessing an instrument of crime, and criminal conspiracy.[3] After a penalty hearing, the jury determined that one aggravating circumstance[4] outweighed one mitigating circumstance,[5] and returned a sentence of death, which the trial court formally imposed on December 9, 1994. We affirmed the conviction and sentence on August 20, 1997. *Washington,* 549 Pa. 12, 700 A.2d 400. The United States Supreme Court denied *certiorari* on June 26, 1998. *Washington v. Pennsylvania,* 524 U.S. 955, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998).

On July 7, 1998, Appellant filed a timely, *pro se* petition for relief under the PCRA.[6] Subsequently, two attorneys from the Defender Association of Philadelphia entered appearances on Appellant's behalf. Defense counsel filed an amended petition in March of 2000 containing twenty-seven primary claims for relief and numerous sub-claims. After reviewing the petition and the record, the PCRA court dismissed the petition without hearing on June 26, 2001, finding Appellant's claims vague, not cognizable under the PCRA, previously litigated, waived, frivolous, and without merit. This appeal followed.[7]

■ On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of

3. 18 Pa.C.S. §§ 2502(a), 3701, 2701(a), 907, 903, respectively.

4. *See* 42 Pa.C.S. § 9711(d)(6) ("The defendant committed a killing while in the perpetration of a felony").

5. *See id.* § 9711(e)(8) ("Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense").

6. The record discloses that Appellant's PCRA petition was dismissed by the PCRA court, and that on August 10, 1998, we granted Appellant's emergency motion for stay of execution and vacated and remanded the petition to the PCRA court for consideration. *Commonwealth v. Washington,* 107 E.D. Misc. Doc. (Aug. 10, 1998). The petition is now before us for substantive review.

7. This Court has jurisdiction over this capital PCRA appeal under 42 Pa.C.S. § 9546(d).

the PCRA court is supported by the record and free of legal error. *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94 (2001); *Commonwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167, 1170 n. 3 (2000). In order to be eligible for PCRA relief under the statute, Appellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the following enumerated circumstances:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

In addition, Appellant must prove the issues raised have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." *Id.* §§ 9543(a)(3), (4). An issue has been previously litigated if the highest appellate court in

which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue. *Id.* § 9544(a)(2); *Commonwealth v. Crawley,* 541 Pa. 408, 663 A.2d 676, 678 (1995). A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b).

 Appellant raises sixteen claims of error for review, several of which have numerous subparts. Appellant advances several allegations of ineffective assistance of counsel relating to both the guilt and penalty phases of trial. In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 441 (1999). To overcome this presumption, Appellant must establish three factors. First, that the underlying claim has arguable merit. *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, that counsel had no reasonable basis for his action or inaction. *Id.* In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. *See Rollins,* 738 A.2d at 441; *Commonwealth v. (Charles) Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987). Finally, "Appellant must establish that he has been prejudiced by counsel's ineffectiveness; in order to meet this burden, he must show that 'but for the act or omission in question, the outcome of the proceedings would have been different.'" *See Rollins,* 738 A.2d at 441 (quoting *Travaglia,* 661 A.2d at 357). A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. *Commonwealth v. (Michael) Pierce,* 567 Pa. 186, 786 A.2d 203, 221–22 (2001); *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine wheth-

er the first and second prongs have been met."). In the context of a PCRA proceeding, Appellant must establish that the ineffective assistance of counsel was of the type "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt of innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). *See also (Michael) Pierce*, 786 A.2d at 221–22; *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999).[8]

■■ All allegations relating to trial counsel's stewardship are waived, as they were not raised during post-trial or direct appellate proceedings. *See* 42 Pa.C.S. § 9544(b); *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 812 (2004). Although we have held that claims of trial counsel's ineffectiveness raised for the first time on collateral review will no longer be deemed waived, *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002), that holding does not apply here because Appellant's direct appeal concluded prior to *Grant*. We will therefore analyze Appellant's claims of ineffective assistance of counsel under the pre-*Grant* framework, under which a petitioner cannot invoke substantive merits review of a waived claim of ineffective assistance of trial counsel by simply appending a conclusory assertion that all intervening counsel were ineffective for failing to raise it. *See D'Amato*, 856 A.2d at 812. Rather, the only claim over which the PCRA court retains cognizance is that of appellate counsel's ineffectiveness. *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 656 (2003). Appellant must therefore present argument as to

8. In *(Charles) Pierce*, 515 Pa. 153, 527 A.2d 973, this Court recognized that the *Strickland* test was the proper test to evaluate ineffectiveness claims raised under the Pennsylvania Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Third Circuit has likewise recognized that Pennsylvania's standard for assessing claims of counsel ineffectiveness is materially identical to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir.2000). Although the Pennsylvania test for ineffectiveness is the same as *Strickland's* two-part performance and prejudice standard, in application this Court has characterized the test as tripartite, by dividing the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis. *Commonwealth v. Jones*, 571 Pa. 112, 811 A.2d 994 (2002).

each layer of ineffectiveness, on all three prongs of the ineffectiveness standard. *See Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) ("[I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, he must **plead, present,** and **prove**" the ineffectiveness of appellate counsel.); *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 (2001) ("PCRA counsel must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel."). A layered claim of appellate counsel's ineffectiveness relates back to the actions of trial counsel, so that the three prong test for trial counsel's ineffectiveness, if satisfied, supplies the arguable merit prong of the claim of appellate counsel's ineffectiveness. *Id.* Because this Court had not been entirely clear as to what is required of a PCRA petitioner seeking to plead and prove a layered claim of ineffectiveness, we indicated in *McGill* a general preference to remand to the PCRA court for further development in circumstances where a petitioner has not properly layered the claims. A remand is unnecessary, however, where the post-conviction petitioner fails to "thoroughly plead and prove" the underlying allegation that trial counsel was ineffective. *D'Amato,* 856 A.2d at 812.

Appellant's claims will be addressed *seriatim.*

## Discussion

### I. Alleged After–Discovered Evidence

Appellant contends that the PCRA court erred in not holding an evidentiary hearing to explore his claim that he is entitled to a new trial based upon after-discovered evidence. *See* 42 Pa.C.S. § 9543(a)(2)(vi). The evidence at issue consists of four declarations that Appellant presented to the PCRA court and a copy of the police description of the assailants broadcasted shortly after the crime, which Appellant argues provides a description of his co-defendant Teagle as the shooter. Pursuant to the PCRA, Appellant may be eligible for relief only if he pleads and proves that his conviction or

sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *See Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 49–50 (2002) (holding that affidavit of alleged recantation witness provided no basis for PCRA relief on after-discovered evidence claim where statement merely asserted that the witness had "no knowledge" of crime and thus was not exculpatory).

To obtain relief based upon newly-discovered evidence under the PCRA, Appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *See D'Amato,* 856 A.2d at 823; *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 94 (1998). Appellant's argument appears to contain five distinct newly-discovered evidence claims. The PCRA court did not analyze these claims individually, instead finding that they are waived, do not establish grounds for relief under the PCRA, and are not persuasive evidence of innocence. Appellant asserts that absent an evidentiary hearing, the PCRA court was not in a position to conclude that the evidence was not persuasive. Appellant also includes a blanket assertion of ineffective assistance of trial and appellate counsel for failing to investigate and present this evidence at trial or to the appellate court.

### A. Teagle's Declaration

Appellant's first claim of after-discovered exculpatory evidence is based on his co-defendant's recently modified account of the robbery and killing. After turning himself in to police, Teagle gave a statement in which he asserted that although he carried a gun during the robbery, the gun was not functioning and he fired no shots. He gave no other pre-trial statement and did not testify at trial. His redacted police

confession was admitted at trial as evidence against Teagle.[9]

Appellant filed a supplemental declaration with the PCRA court dated February 15, 2001, in which Teagle asserts that he, not Appellant, fired the fatal shot; that he lied about Appellant being the shooter to avoid the death penalty; that he has told close friends, including Appellant's mother and grandmother, that he regrets what happened; and that the shooting was an accident, an errant shot that randomly struck the victim. Appellant asserts that this declaration is conclusive evidence that he was wrongly convicted. Applying the above test for newly discovered evidence under the PCRA, Appellant asserts that Teagle did not come forward with this statement until February, 2001, reasonable diligence would not have procured this testimony for Appellant at the time of trial, the evidence is not cumulative, and it compels a different result.

The Commonwealth asserts that, to the contrary, Teagle's declaration does not constitute newly-discovered evidence at all, because whichever defendant fired the fatal shot, Appellant knew this information from day one, and could not have only recently "discovered" that Teagle, not he, shot the victim. In fact, the Commonwealth points out that Appellant's brother, Elijah Washington, who testified for Appellant at his penalty phase hearing in 1994, testified that Teagle had told him that he was shooter. Thus, at the very latest, Appellant was aware of Teagle's assertion at the time of the penalty phase hearing. Further, the Commonwealth asserts that Teagle's declaration is simply incredible, in that after being convicted and sentenced for second-degree murder, he cannot

9. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that the introduction at trial of a non-testifying co-defendant's confession describing the defendant's participation in a crime deprives the defendant of his rights under the Confrontation Clause. In *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court held that no *Bruton* violation occurs where the statement is redacted to remove any specific references to the defendant and a proper limiting instruction is given.

be tried a second time and therefore has nothing to lose by attempting to exculpate Appellant.[10]

Although Appellant refers to Teagle's confession-declaration as a recantation, it is not technically so, as Teagle's police statement was only admitted as evidence against him, not Appellant. Because Teagle did not testify against Appellant at trial, his declaration cannot amount to a true recantation. Nevertheless, Teagle's current assertion contradicts his pre-trial statement to police and is a confession to the crime for which Appellant was convicted and sentenced. We will there-fore analyze Teagle's declaration consistently with our prior jurisprudence pertinent to recantation evidence.

We have held that, as a general matter, after-discovered evidence of this nature "is notoriously unreliable, particularly where the witness claims to have committed perjury," *D'Ama-to*, 856 A.2d at 825, and that post-verdict accomplice testimony must be viewed with a jaundiced eye. *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265, *cert. denied*, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). We have also said, howev-er, "even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." *D'Amato*, 856 A.2d at 825. In *Com-monwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), we were faced with the PCRA court's failure to make any inde-pendent determination as to the believability of the recanting person, where the PCRA court adopted the Commonwealth's argument on the matter wholesale. We remanded for a hearing at which the subject could be heard, noting that the PCRA court as factfinder is the appropriate entity to assess the credibility of the prospective testimony as reflected in the post-trial declaration. In *D'Amato*, the PCRA court did not mention the recantation in its opinion. We reiterated that the PCRA court, by failing to address the recantation in its

**10.** The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution protects the convicted defendant from multiple prosecutions for the same offense. *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 571–72 (1981); *see also Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

opinion, had defaulted in its duty to assess the credibility of that statement and its significance in light of the trial record, and therefore remanded for the limited purpose of making such determination.

Here, the PCRA court, unlike those in *Williams* and *D'Amato*, analyzed Teagle's confession and noted that Teagle had nothing to lose in contradicting his pre-trial statement. The PCRA court concluded that the claim was waived, that the evidence was not truly after-discovered, and was not persuasive evidence of innocence, implicitly finding that Teagle's affidavit was not credible.[11] Thus, the PCRA, as fact-finder, having assessed the credibility of Teagle's confession and its significance in light of the trial record, properly denied Appellant relief.

### B. Martha Harrington Declaration

Martha Harrington testified at trial that she heard Appellant tell her boyfriend LaVaughn Robinson that he had shot the security guard, and on a subsequent occasion Appellant told her directly that he had shot the victim. In a September 1999 declaration, which Appellant submitted to the PCRA court, Harrington recanted her testimony, stating that she heard Appellant say that he and Teagle had robbed the store, and that Teagle shot the security guard. She also claims that had trial counsel contacted her prior to her testimony, she could have been convinced to testify truthfully, but because no one contacted her, she lied from the witness stand.

Appellant asserts that Harrington's recantation constitutes newly discovered evidence which requires an evidentiary hearing and relief. Appellant concedes, however, that this testimo-

---

11. The PCRA court also cited 42 Pa.C.S. § 9545(b)(1)(ii), which provides for PCRA review "where the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." This provision, however, is inapplicable to the current analysis, as it pertains to exceptions to the mandatory timeliness requirement of the PCRA. Appellant's after-discovered evidence argument is not made to obtain review of his claims; rather, it is made to obtain relief pursuant to 42 Pa.C.S. § 9543(a)(2)(vi).

ny would have been discovered by competent counsel, thus accepting that he cannot establish that "the evidence . . . could not have been obtained at or prior to trial through reasonable diligence." *D'Amato*, 856 A.2d at 823; *Abu–Jamal*, 720 A.2d at 94. Thus, the only claim Appellant can assert with regard to Harrington's declaration is that pertaining to trial counsel's ineffectiveness, and appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness on appeal.

In this regard, Appellant asserts that trial counsel was ineffective for failing to investigate and interview Harrington. As we have stated, however, all allegations relating to trial counsel's stewardship are waived, as they were not raised during post-trial or direct appellate proceedings in this pre-*Grant* case. *See* 42 Pa.C.S. § 9544(b); *D'Amato*, 856 A.2d at 812. Further, it is not necessary to remand to the PCRA court to allow Appellant to layer properly this claim to impugn the effectiveness of trial counsel, as Appellant has failed to "thoroughly plead and prove" the underlying allegation that trial counsel was ineffective. *See McGill*, 832 A.2d at 1022; *D'Amato*, 856 A.2d at 812.

Apparently, it is Appellant's position that trial counsel is responsible for interviewing every Commonwealth witness prior to cross-examining him or her at trial. Appellant, however, does not support this position with any legal argument or citation. In fact, we have never held that trial counsel is obligated to interview every Commonwealth witness prior to trial. Moreover, under the facts of this case, we find that Appellant's counsel had ample reason to believe that an independent interview with Harrington was unnecessary and, in fact, would have proved fruitless. *See, e.g., Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986, 987–88 (1980) (holding that independent interview is unnecessary if counsel could conclude prior to interview that witness' testimony would be of no value or damage defense's case); *Commonwealth v. Arthur*, 488 Pa. 262, 412 A.2d 498, 502 (1980) (same). Through information turned over by the Commonwealth during discovery on December 15, 1993, counsel had personal knowledge of Harrington's statement, which was inconsistent with Appellant's ver-

sion of the facts and belied his mistaken identity argument. Trial counsel extensively cross-examined this witness, and she never wavered from her trial testimony.[12] With knowledge of her pre-trial statement, counsel's failure to interview Harrington personally does not constitute ineffectiveness. Accordingly, this claim fails.

### C. Mishe Miller Declaration

■■■ Miller was Appellant's girlfriend at the time of the murder. She told police that Appellant and Teagle were at her house immediately following the robbery and described what happened. She stated that Teagle showed her a working gun and explained why he shot the security guard. Miller did not testify at trial. Appellant supplied the PCRA court with a December 3, 1999 declaration in which Miller asserts that although she gave police this statement, trial counsel did not contact her regarding her statement before trial.

Appellant raises two arguments in regard to Miller's declaration. First, Appellant asserts that although she gave a statement to police, neither the police, the prosecutor, nor any other Commonwealth official disclosed this statement to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("the suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). However, the Commonwealth asserts, and the record confirms, that the Commonwealth did, in fact, provide trial counsel with a copy of Miller's police statement, as evidenced by a cover letter dated December 15, 1993, purporting to forward, *inter alia*, Miller's statement.

Second, Appellant argues that trial counsel was ineffective for failing to interview Miller despite the fact that she was known to be Appellant's girlfriend and knew the other witnesses involved in the trial. Had trial counsel performed a

---

12. One of the reasons Harrington now says she lied on the stand was in revenge for Appellant's poor treatment of her sister, Appellant's ex-girlfriend. Trial counsel, in fact, attempted to elicit evidence of this bias in cross-examining Harrington.

reasonable and adequate independent investigation, Appellant asserts that he would have interviewed Miller and the jury would have heard her testimony regarding Teagle's confession. Appellant does not argue appellate counsel's ineffectiveness, that trial counsel lacked a reasonable basis for not interviewing or calling Miller as a witness, or that he was prejudiced by trial counsel's failure in this regard.

To establish that counsel was ineffective for failing to call a witness, Appellant must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *See Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (2000). Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). It is Appellant's burden to demonstrate that trial counsel had no reasonable basis for declining to call Miller as a witness. *See Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173, 175 (1993).

Appellant has not attempted to demonstrate that counsel had no reasonable basis for not interviewing and calling Miller as a witness. In fact, as the Commonwealth points out, a reasonable basis is apparent from the record. At trial, Appellant proceeded with a strategy of mistaken identity and denied any involvement whatsoever in the robbery. Miller's purported testimony that Appellant and Teagle were at the scene, but that Teagle is the one who shot the victim, would have implicated Appellant, and contradicted his defense theory.[13] "Generally, where matters of strategy and tactics

13. The record also indicates that trial counsel was aware that other witnesses claimed to hear Teagle confess to being shooter. Specifically, the Commonwealth provided trial counsel with the statement of Appellant's brother, Elijah Washington, on December 15, 1993, which indicated that he heard Teagle confess. Given this information, counsel

are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Miller*, 572 Pa. 623, 819 A.2d 504, 517 (2002). A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued. *Id.* Accordingly, this claim fails.

### D. LaVaughn Robinson Declaration

In a supplemental filing with the PCRA court, Appellant submitted the unsigned, undated declaration of LaVaughn Robinson. Because it is not even signed by the declarant, this declaration does not satisfy the PCRA's requirement that only a signed certification can warrant a hearing:

> Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d)(1). Regardless of this deficiency, however, and even assuming the truth of the assertions, Appellant's claim fails.

Police interviewed Robinson a month after the robbery, and Robinson stated that Appellant had confessed to the robbery and murder. In the declaration, Robinson states that this statement was untrue and that he was coerced into lying about hearing the confession by threats of jail time for violating probation if he didn't tell police what they wanted to hear. Robinson asserts that he did not want to risk a perjury charge, so rather than testify truthfully at trial and contradict his police statement, he fled. Although Robinson did not testify at trial, his girlfriend Martha Harrington testified that she listened in on the telephone conversation between Appellant and Robinson in which Appellant confessed.

was aware that Teagle had confessed to other individuals, but decided to proceed with a different strategy.

Appellant baldly asserts, without any analysis or argument, that had trial counsel interviewed Robinson, "this information" could have been presented to the jury, apparently raising an ineffectiveness claim for failing to interview Robinson or present him as a witness. This assertion, however, is belied by the declaration itself. By his own admission, Robinson was unwilling to testify truthfully, and fled from police to avoid doing so. Therefore, Appellant cannot establish that Robinson was available to testify for the defense, and his ineffectiveness claim necessarily fails. *See Fletcher,* 750 A.2d at 275.

### E. Police Teletype Broadcast

Following dismissal of the PCRA petition currently before us, Appellant filed with the PCRA court a motion to reconsider his petition on the basis of alleged after discovered evidence in the form of three documents that he purports to have received on July 23, 2001: a computer print-out, a handwritten document entitled "descriptions," and a document entitled "General Radio Message," which Appellant alleges are the original police broadcast descriptions of the assailants. Their significance appears to be that someone who fit Teagle's description was reported to police as carrying a silver gun. Appellant claims that these documents support his assertion of innocence and demonstrate that the Commonwealth violated *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, by failing to turn these documents over to the defense.

Any claim not raised in the PCRA petition is waived and not cognizable on appeal. *See* Pa.R.A.P. Rule 302 (stating "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Zillgitt,* 489 Pa. 189, 413 A.2d 1078, 1080 n. 3 (1980). This claim, brought following dismissal of the PCRA petition, is therefore waived. In any event, Appellant has not established that these documents are newly discovered evidence at all as he does not explain how he discovered them, much less why they could not have been discovered earlier with the exercise of due diligence.

## II. Identification Testimony

 Appellant next asserts two claims of ineffective assistance of counsel in relation to the identification testimony of two Commonwealth witnesses: Juana Robles and Officer Smith. Appellant asserts "to the extent that all prior counsel failed to adequately litigate these issues they were ineffective," but does not analyze the three prongs of counsel ineffectiveness as they relate to trial or appellate counsel. In baldly asserting the ineffectiveness of all prior counsel, Appellant has failed to develop this claim in any meaningful fashion, instead arguing his claim as if he were on direct appeal. Claims of trial counsel ineffectiveness raised for the first time on collateral review are waived unless properly raised and analyzed as layered claims of appellate counsel's ineffectiveness. *Commonwealth v. Jones*, 571 Pa. 112, 811 A.2d 994, 1003 (2002); *Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978, 988 (2002) ("Claims of ineffective assistance of counsel are not self-proving...."); *(Michael) Pierce*, 786 A.2d at 221 (noting that an appellant cannot prevail on claim of ineffective assistance of counsel when claim is not developed). In addressing these claims, the PCRA court found them waived, frivolous, and without merit, and further held that Appellant failed to prove prejudice.

### A. Identification by Robles

 As noted in our decision on direct appeal, Robles was a customer at the Save–A–Lot at the time of the robbery. She was unable to identify Appellant at a line-up on August 18, 1993, but at trial she positively identified Appellant as the man who had pointed a gun at her and ordered her not to leave the store. *Washington*, 700 A.2d at 405. Appellant asserts that her failure to identify him at a pre-trial line-up rendered her in-court identification suggestive and that courtroom confrontations create a substantial risk of misidentification. *See Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Commonwealth v. McGaghey*, 510 Pa. 225, 507 A.2d 357 (1986). Thus, Appellant argues, trial coun-

sel was ineffective for failing to object to Robles' identification testimony and for failing to move to suppress the testimony.

Appellant's claim fails. Robles' inability to identify Appellant at the line-up did not affect the admissibility of her in-court identification, but only its weight and credibility. *See Commonwealth v. Rashed*, 496 Pa. 26, 436 A.2d 134, 136 (1981); *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642, 647 (1976) ("The fact that [the witness] was unable to identify appellant at the lineup is relevant to only the weight and credibility of his testimony."). Although Robles did not identify Appellant in the police line-up, there is no indication in the record, nor does Appellant allege, that the police identified Appellant to Robles or engaged in any other suggestive behavior at any time. Thus, there is no need to provide an independent basis for Robles' in-court identification. *See Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 141 (1996) (concluding that where the witness identified the wrong man in the police line-up, but where there was no indication in the record that the police identified the appellant to the witness or engaged in any other suggestive behavior, there was no need to provide an independent basis for the in-court identification).

In any event, the Commonwealth elicited an independent basis for Robles' identification of Appellant, which was subjected to cross-examination at trial. Robles testified that she had a good opportunity to view Appellant in the Sav–A–Lot store, where lighting conditions were "nice and bright," and she saw Appellant face-to-face from ten feet away for about twenty minutes. *See Commonwealth v. Abdul–Salaam*, 544 Pa. 514, 678 A.2d 342, 349 (1996) (noting that in determining the independent basis for an in-court identification, courts look to the witness' opportunity to observe the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior identification, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation). In the face of this independent basis, the trial court would have properly denied a motion to suppress Robles' testimony. *Rashed*, 436 A.2d at

138. Again, the fact that Robles failed to identify Appellant in the line-up goes to weight, and not admissibility.

Further, Appellant has not and, indeed, cannot, demonstrate prejudice. In addition to the eyewitness testimony of Officer Smith, discussed below, the Commonwealth also introduced the testimony of Martha and Melissa Harrington, who each testified that Appellant confessed to the murder. Further, Appellant's brother, Elijah Washington, testified that on the night of the murder, Appellant called him and instructed him to take Teagle home, as police might be looking for him. Therefore, Appellant's claim of trial counsel ineffectiveness for failing to pursue this issue fails, and his claim regarding appellate counsel also must fail.

### B. Identification by Officer Smith

Gerard Smith, the off-duty police officer working as a security guard in the store next to the Sav–a–Lot, identified Appellant from a photo array six weeks after the shooting, prior to Appellant's arrest. He also identified Appellant at a line-up, at the preliminary hearing, and at trial. See N.T., 10/3/94, at 69, 89–95; *Washington,* 700 A.2d at 406. Appellant asserts that Officer Smith's identification of him is unreliable and should not have been admitted because, following the robbery, Officer Smith saw the assailant for just a couple of seconds, in a dimly lit parking lot through a maze of cars, as the assailant was running away from him. Again, Appellant argues this claim as if he were on direct appeal, rather than in terms of layered ineffective assistance of counsel. Nevertheless, after a review of the record, we conclude that Appellant's claim lacks merit.

Appellant does not allege that the pre-trial identifications were suggestive. Rather, Appellant's arguments about the circumstances surrounding Smith's ability to see him following the robbery all go to the jury's weighing of testimony, not its admissibility. There was simply no basis for trial counsel to challenge the admissibility of Officer Smith's in-court identification. *See Commonwealth v. Fletcher,* 561 Pa. 266, 750 A.2d 261, 277 (2000) (ruling that the eyewitness' smoking crack

when she observed crime went to weight rather than admissibility). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. May*, 587 Pa. 184, 898 A.2d 559, 564 (2006); *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 653 (2001).

### III. *Kloiber* Instruction

Next, in a related issue, Appellant asserts that all prior counsel were ineffective for failing to object to or challenge the trial court's cautionary instruction concerning the identification testimony of Robles and Officer Smith. *See Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). Pursuant to *Kloiber*, where a witness was not in a position to observe the assailant clearly, or had previously failed to identify the defendant, upon defendant's request the court must instruct the jury to receive the witness' identification testimony with caution. *Id.* at 826–27; *see Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 181 (1999). Appellant asserts that he was entitled to a *Kloiber* instruction because Robles previously failed to identify Appellant at a line-up, and Officer Smith's identification was questionable because he was not in a position to see the perpetrator clearly. He argues that the trial court gave a watered-down version of the charge, stating that the testimony must be received with caution only if the jury believed the accuracy of the identification was doubtful. Without analysis, the PCRA court dismissed this claim, finding it waived, frivolous, without merit, and not prejudicial.

Once again, Appellant fails to address this claim within the three prongs of the test for counsel's ineffectiveness. *See (Charles) Pierce*, 515 Pa. 153, 527 A.2d 973; *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Moreover, the underlying claim of trial counsel ineffectiveness lacks merit. When reviewing jury instructions for error, the charge must be read as a whole to determine whether it was fair or prejudicial. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately present-

ed to the jury for its consideration." *Id.* at 1274 (citing *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61, 70 (1983)). The trial court instructed the jury as follows:

> If you believe you heard testimony concerning eyewitnesses who believed they identified certain people, the law gives us some guidelines in that respect. It is called identification testimony. Where a witness has an opportunity to positively identify and the identification is that the witness is positive in his or her identification, and if you believe that the identification has not been weakened by any prior failure to identify but remains even after cross examination positive and unquavered, then the testimony as to identification need not be received with caution. Indeed, positive testimony as to identity may be treated as statement of a fact.
>
> On the other hand, where the witness is not in a position to clearly observe or if you believe that the lighting conditions were not good, or for some reason the witness could not be positive in identity, if that is weakened by either a prior failure to identify or appearance of a lineup where they weren't sure, then the accuracy of the identification made in court then may become so doubtful that the Jury has the ability to receive that testimony as to identity with caution. The law states that if there was a prior failure to identify or if you believe that the accuracy of the identification is doubtful, that testimony as to identity therefore must be received with caution.

N.T. 10/11/1994, 18–19.

This instruction is in accord with the Pennsylvania Suggested Standard Jury Instructions (Crim) § 4.07, which itself derives from *Kloiber.* The court conveyed to the jury that it *must* receive with caution the testimony of any witness who had failed to identify the defendant or whose identification is of doubtful accuracy. We specifically approved this jury instruction in *Commonwealth v. Henderson,* 497 Pa. 23, 438 A.2d 951, 958 (1981), and again in *Commonwealth v. Trivigno,* 561 Pa. 232, 750 A.2d 243, 253 (2000). Thus, even if we were to determine that the instruction was improper, which we

absolutely do not, the charge was appropriate at the time and counsel had a reasonable basis not to object to it. *See Trivigno,* 750 A.2d at 253. Appellant has not established that trial counsel was ineffective for failing to object to this charge or to request a more appropriate charge.

## IV. Appellant's Photographs

Appellant next alleges ineffective assistance of appellate counsel in connection with the introduction of his "mug shots" at trial. The Commonwealth introduced evidence that Officer Smith had twice identified Appellant prior to trial, first *via* photographic array prior to Appellant's arrest for the robbery and murder. During Officer Smith's direct examination, the prosecutor asked him about the photographic identification. Upon Officer Smith's testimony that he recognized Appellant's photographs, the Commonwealth moved to introduce this photographic array into evidence. Trial counsel objected, and at sidebar expressed his concern that Appellant's photographs were mug shots, which, because Appellant had not been arrested for the robbery and murder at the time Officer Smith identified his photographs, would convey to the jury that Appellant had prior contact with the police, thus prejudicing him. Trial counsel stated that he knew the photographs were mug shots, as did the prosecutor, as did the trial court, to which the trial court interjected that the jury was not aware they were mug shots and that they could have been collected from his mother's bedroom. The trial court questioned the Commonwealth's strategy of introducing the photographs on direct examination rather than waiting for trial counsel to challenge the identification on cross-examination. The Commonwealth submitted that all identifications were relevant and demonstrated that Officer Smith had consistently identified Appellant. The trial court ruled that because the photographs were relevant, they were admissible. Trial counsel did not request a curative instruction.

Appellant's argument of appellate counsel ineffectiveness is twofold: First, he argues that appellate counsel was ineffective for failing to challenge the trial court's decision to admit

the photographs on direct appeal. Second, he alleges a layered claim of ineffective assistance of counsel: that trial counsel was ineffective for failing to request a curative instruction, and that appellate counsel was ineffective for failing to litigate trial counsel's ineffectiveness on appeal.

Addressing the first argument, based on the trial court's admission of the photographs, both Appellant and the Commonwealth argue that *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972), is the starting point of our analysis. Appellant argues that pursuant to *Allen,* the photographs indicated that Appellant had engaged in prior criminal activity, thus creating prejudicial error. Appellant does not, however, establish how the photographs conveyed to the jury that they were mug shots, by, for example, displaying the police identification number. The Commonwealth argues that the jury was never told the source of the photographic array. Further, pursuant to *Allen,* the Commonwealth asserts that Officer Smith's passing reference to the photographs was not *per se* prejudicial, rendering the photographs' subsequent admission proper.

In *Allen,* the Commonwealth's witnesses had referred to the fact that the police had shown them photographs of the defendant, which an officer testified were acquired from "contact with police" and later referred to by police number. In determining whether these references amounted to reversible error, we rejected a *per se* rule that any trial reference to photographs in police possession requires reversal, instead holding that the important question is:

> whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity.

*Id.* at 375; *see also Commonwealth v. Young,* 578 Pa. 71, 849 A.2d 1152 (2004) (analyzing *Allen* and reviewing its application in different contexts). Where the jury could have reasonably inferred from the photographic evidence presented at trial that a defendant was involved in prior criminal activity, reversible error occurred. *Allen,* 292 A.2d at 375.

After *Allen,* we clarified the scope of the inquiry, culminating in our discussion in *Young,* 849 A.2d at 1155. In applying the *Allen* test to the facts of a particular matter, we noted in *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71, 73 (1975), a mere passing reference to photographs does not amount to prejudicial error. *Young,* 849 A.2d at 1156. In *Carlos,* an eyewitness testified that after the crime he viewed photographs exhibited to him by a police detective and identified the defendant's photograph. In rejecting the argument that the jury could have inferred from the police detective's possession and display of the photos that they were mug shots and the defendant had a prior criminal record, we stated "aside from the fact that a police officer displayed the photograph, there was nothing else linking it to the police. It is highly unlikely that a juror would conclude from this alone that Carlos had engaged in prior criminal conduct." *Carlos,* 341 A.2d at 71. Similarly, references to prior police contact do not amount to reversible error. *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520, 524 (1978). In *Riggins,* a police officer testified in passing that when defendant's name came up in the investigation, he already knew where he lived. We held that reversal was unwarranted because "to conclude that appellant had committed prior crimes from a detective's single statement that he knew where appellant lived, the jury would have to indulge in gross speculation." *Id.* at 524.

In contrast, "it is only those references that expressly or by reasonable implication also indicate some involvement in prior criminal activity that rise to the level of prejudicial error." *Young,* 849 A.2d at 1156. In *Commonwealth v. Nichols,* 485 Pa. 1, 400 A.2d 1281 (1979), all Commonwealth witnesses were men, but a police witness testified that a woman witnessed defendant's conduct in a line-up. In addition, the jury was

informed that the Commonwealth's witness viewed photographs of the defendant. On appeal, we agreed with the defendant that this evidence prejudiced his right to a fair trial: "the jury could reasonably have inferred that Nichols was involved in other unrelated crimes from the evidence relating to the ... lineup, prejudice resulted, and a new trial must be granted.". Similarly, in *Commonwealth v. Turner*, 454 Pa. 439, 311 A.2d 899 (1973), we held that a police officer's testimony that the photographs were of robbery suspects and defendants was prejudicial error.

Because Appellant argues that appellate counsel was ineffective for failing to challenge the photographs' admission on appeal, this is not a layered claim of ineffectiveness. To be successful, Appellant must demonstrate the three prongs of *Pierce* as they pertain to appellate counsel. First, he must demonstrate that his underlying claim of trial court error has arguable merit. Caselaw, as it existed at the time of Appellant's direct appeal, indicated that mere passing references to photographs do not amount to reversible error. *Riggins*, 386 A.2d at 524; *Carlos*, 341 A.2d at 73. Further, *Riggins* indicated that reversal is unwarranted where the jury could only surmise prior criminal conduct based upon gross speculation. On the other hand, references that expressly or implicitly indicate some involvement in prior criminal activity rise to the level of prejudicial error. *Nichols*, 485 Pa. 1, 400 A.2d 1281; *Turner*, 454 Pa. 439, 311 A.2d 899.

Here, Officer Smith testified that he looked at some photographs and recognized Appellant. Because he did not refer to prior criminal activity, this comment can fairly be described as a passing reference to photographs. The Commonwealth did not stop there, however, but moved to admit the photographic array. But Appellant does not discuss how the photo array implied prior criminal conduct; he refers to the photographs as mug shots without discussing what identified the pictures as such, and baldly claims that the publication of the photographs to the jury prejudiced him. Appellant has not cited any testimony in the record or anything about the photographs themselves that implied prior criminal conduct. With-

out a clear argument regarding why or how the jury "could have reasonably inferred from the photographic evidence presented at trial that a defendant was involved in prior criminal activity," *Allen*, 292 A.2d at 375, there is no basis for finding reversible error. Accordingly, Appellant has not demonstrated the arguable merit of his argument that the trial court erred in admitting the photographs. Thus, his claim that appellate counsel was ineffective for failing to challenge the photographs' admission at trial must fail.

 Addressing Appellant's argument that trial counsel was ineffective for failing to request a curative instruction following admission of the photographs and appellate counsel was ineffective for not raising this claim on appeal, we find that counsel had a reasonable basis for not requesting the instruction. "[C]ounsel's stewardship may be deemed effective if any reasonable basis for his or her actions is apparent from the record, and counsel's actual reasoning need not be established at an evidentiary hearing." *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074, 1079 (1993). After objecting to the admission of the photographs and being overruled, trial counsel had a reasonable basis not to seek a cautionary instruction, which would only have drawn the jury's attention to the photograph. *See Commonwealth v. Spotz*, 582 Pa. 207, 870 A.2d 822, 832 (2005) ("Objections sometimes highlight the issue for the jury, and curative instructions always do."); *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 230 (1995) (finding that it is reasonable for trial counsel not to object where doing so would highlight a fleeting comment to the defendant's detriment). Thus, Appellant is entitled to no relief on this claim.

## V. Sufficiency of the Evidence

 Appellant raises two claims that implicate this court's review of the sufficiency of the evidence on direct appeal. On direct appeal, as we do in all capital cases, this Court reviewed the sufficiency of the evidence for first-degree murder. *Washington*, 700 A.2d at 404. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner,

we found the evidence sufficient to support the conviction. In finding the evidence sufficient, we noted that "specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body." *Id.* (citing *Commonwealth v. Michael,* 544 Pa. 105, 674 A.2d 1044, 1047 (1996)). When he saw Tracey Lawson pursuing him, Appellant turned and fired, hitting Lawson in the head and killing him. We found that evidence sufficient to establish that Appellant shot Lawson with the specific intent to kill.

Appellant now challenges the sufficiency of the evidence to support his conviction for first-degree murder. The PCRA court rejected this claim, finding it previously litigated on direct appeal. *See* 42 Pa.C.S. § 9543(a)(3). Rather than challenge this conclusion, Appellant argues that the evidence is insufficient because the mere fact that he shot in the victim's direction cannot rationally support an inference that he had the specific intent to kill; rather, the evidence is "equally consistent with the probability that [Appellant] sought only to scare or wound the guard and stop his pursuit." Appellant's Brief at 47. Appellant argues that this Court's reliance on direct appeal on the presumption that the specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the body was erroneous, and appellate counsel was ineffective for failing to contest the application of the presumption under the facts of this case.

We agree with the PCRA court that this is an attempt to re-litigate the sufficiency of the evidence by attacking appellate counsel's failure to challenge the presumption of intent to kill. *See* 42 Pa.C.S. § 9543(a)(3). We have recently held, however, that ineffectiveness claims are distinct issues from those claims raised on direct appeal and should be reviewed under the three-prong ineffectiveness standard. *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 573 (2005). Thus, we will analyze Appellant's claim under the rubric of appellate counsel's ineffectiveness.

Doing so, we have no problem in finding that the claim lacks merit. Appellant cites no authority for the propo-

sition that this Court had to find that he intentionally aimed at the victim's head before we could find sufficient evidence to support an inference of the specific intent to kill. To the contrary, as noted on direct appeal, the critical inquiry is the *use* of a deadly weapon on a vital part of the body, *Washington*, 700 A.2d at 404, not the intentional aiming of the weapon at a vital part of the body. *See Michael*, 674 A.2d at 1047 (Pa.1996).

As we made clear in *Collins*, although we will analyze a distinct claim of ineffectiveness that is based on the underlying issue decided on direct appeal, in many cases those claims will fail for the same reasons they failed on direct appeal. *Collins*, 888 A.2d at 574–75. Here, we addressed the sufficiency of the evidence on direct appeal. Appellant has not demonstrated arguable merit to his claim that, had appellate counsel advanced the present argument, we would have found the presumption of intent inapplicable to the facts of this case. Therefore, appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence in this manner. *May*, 898 A.2d at 564 (counsel will not be deemed ineffective for failing to raise meritless claims).

## VI. Jury Instruction on Intent

In an analogous claim, Appellant argues that the trial court erred in charging the jury that it was permitted to infer the intent to kill from Appellant's use of a deadly weapon on a vital part of the victim's body, and that all prior counsel were ineffective for failing to raise and litigate this issue. The trial court instructed the jury as follows:

If you believe that a defendant used a deadly weapon on a vital part of a human body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant has a specific intent to kill.

N.T. 10/11/1994 at 28. Appellant argues that this instruction was improper because, as advanced in the previous argument, the presumption of intent to kill can be rationally drawn only where the evidence shows intent to use the weapon on a vital part of the victim's body. Appellant argues that trial counsel

was ineffective for failing to object to the charge and appellate counsel was ineffective for failing to litigate this claim. The PCRA court found that this argument was an attempt to relitigate the sufficiency of the evidence, which was decided on direct appeal. Thus, the PCRA court found this issue previously litigated, waived, frivolous, and without merit.

As noted previously, any claim of trial court error or trial counsel ineffectiveness is waived; the only viable claim is that of appellate counsel ineffectiveness. We agree with the PCRA court that this is an attempt to re-litigate the sufficiency of the evidence under the guise of attacking the jury instruction and prior counsel's performance. *See* 42 Pa.C.S. § 9543(a)(3). As noted above, however, we will address the ineffectiveness claim as distinct from the sufficiency of the evidence review on direct appeal pursuant to the three-prong ineffectiveness standard. *Collins*, 585 Pa. 45, 888 A.2d 564. For the same reason we found the evidence sufficient on direct appeal and reject Appellant's present attempt to challenge the sufficiency of the evidence of intent, we find that the underlying claim of trial court error lacks merit. The trial court gave an instruction in accord with the law. *See Michael*, 674 A.2d at 1047. Trial counsel was not ineffective for failing to object to the jury charge, and thus appellate counsel could not have been ineffective for failing to challenge trial counsel's conduct on appeal. *See May*, 898 A.2d at 564.

## VII. Redaction

■■■ Appellant next argues that the introduction of Teagle's redacted confession as part of the Commonwealth's case against Teagle at the joint trial violated Appellant's rights under the Confrontation Clause of the United States Constitution as articulated in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (holding that a defendant's right to confrontation is violated when a non-testifying co-defendant's confession that inculpates the defendant is introduced in a joint trial, because there is a high risk that the jury will consider the statement against the defendant). At trial, Teagle's confession was redacted and Appellant's name was

replaced with the word "blank." On direct appeal, Appellant challenged the trial court's denial of his motion to sever, arguing that he was prejudiced by admission of Teagle's confession because, although his name was replaced with "blank," it "contextually implicated" him in the killing. *Washington,* 700 A.2d at 406. We rejected this claim, finding that even assuming that the admission of Teagle's redacted confession infringed upon Appellant's rights under the Confrontation Clause, the error was harmless and did not prejudice him. *Id.*

Appellant reasserts his argument against admission of the redacted confession based on the subsequent decision of the United States Supreme Court in *Gray v. Maryland,* 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), which held that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . leave statements that, considered as a class, so closely resemble *Bruton's* unredacted statements that, in our view, the law must require the same result." Because Teagle's redacted statement substituted "blank" for Appellant's name, which was expressly prohibited by *Gray* following our decision on direct appeal, Appellant argues that the issue is not previously litigated and requires consideration and relief.

Appellant's argument does not account for our finding, on direct appeal, that even assuming *arguendo* that it was error to admit Teagle's redacted confession with Appellant's name substituted by "blank," the error was harmless. Thus, this claim is previously litigated because we reviewed the claim and ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2).

## VIII. *Batson*

■■■ Appellant next asserts that the Commonwealth exercised its peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant did not raise this claim at trial or on direct appeal. He attempts to overcome waiver by attaching a paragraph to his argument asserting that both trial and appellate counsel were ineffective for failing to raise

and litigate this issue, and appellate counsel could have no strategic basis for ignoring this issue.

 While the mere incantation of the magic words of counsel ineffectiveness is insufficient to overcome waiver, Appellant's claim nevertheless fails on the merits. To establish any merit to a *Batson* claim, Appellant must establish a *prima facie* case of improper use of peremptory challenges. To do so, a defendant must establish that:

> (1) the defendant is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; (2) the defendant can then rely on the fact that the use of peremptory challenges permits "those to discriminate who are [of] a mind to discriminate"; and, (3) the defendant, through facts and circumstances, must raise an inference that the prosecutor excluded members of the venire on account of their race. The third prong requires defendant to make a record specifically identifying the race of all the venirepersons removed by the prosecution, the race of the jurors who served and the race of the jurors acceptable to the Commonwealth who were stricken by the defense. After such a record is established, the trial court must consider the totality of the circumstances to determine whether challenges were used to exclude venirepersons on account of their race. If the trial court finds in the affirmative, it may then require the prosecutor to explain his or her reasons for the challenge. Once the defendant makes a prima facie showing, the burden shifts to the Commonwealth to come forward with a neutral explanation for challenging black jurors.

*Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 475 (1998) (citing *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995)).[14]

14. After the PCRA court dismissed Appellant's petition, we decided *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74, 84 (2004), in which we held that a post-conviction petitioner asserting an unpreserved claim of racial discrimination in jury selection may not rely upon a *prima facie* case under *Batson*, but must prove actual, purposeful

Appellant attempts to meet this burden by contending that the prosecutor "struck six of thirteen (46%) black venire members and only one of nine (11%) white venire members." Appellant's Brief at 54. This claim fails. Appellant has not cited the record to support these numbers and does not reveal the race of individual venire persons whom the Commonwealth struck. This clearly cannot satisfy his burden to identify specifically "the race of all the venirepersons removed by the prosecution, the race of the jurors who served, and the race of the jurors acceptable to the Commonwealth who were stricken by the defense." *Thomas,* 717 A.2d at 475.

Rather than rely on the record in his own case, Appellant supports his argument by relying on a 1998 study conducted by Professors David Baldus and George Woodworth, which concluded the odds of an African–American defendant being sentenced to death in Philadelphia are more than four times greater than for other defendants. *See* David C. Baldus, *et al., Racial Discrimination and the Death Penalty in the Post–Furman Era: An Empirical and Legal Overview, with Recent Findings from Philadelphia,* 83 CORNELL L.REV. 1638 (1998). Appellant also relies on the "McMahon tape," a 1987 videotape in which a Philadelphia assistant district attorney described his views on jury selection, which revealed a policy of racial discrimination. *See Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978 (2002).

This Court has repeatedly rejected similar arguments, holding that the mere existence of the McMahon tape does not demonstrate prejudice in a particular case. *Commonwealth v. Williams,* 581 Pa. 57, 863 A.2d 505, 523 (2004); *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 443 n. 10 (1999); *see Commonwealth v. Marshall,* 570 Pa. 545, 810 A.2d 1211, 1228–29 (2002); *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 588–89 (2000). Similarly, we have rejected speculative arguments based on the Baldus study. *See Williams,* 863

discrimination by a preponderance of the evidence. *Uderra,* 862 A.2d at 87 (citing *McCrory v. Henderson,* 82 F.3d 1243, 1251 (2d Cir.1996)). *See also Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067, 1073 (2006).

A.2d at 523; *Commonwealth v. Morris*, 573 Pa. 157, 822 A.2d 684, 698 (2003). Thus, Appellant's reliance on the Baldus report and McMahon tape are of no avail, and his *Batson* challenge fails.

### IX. Racial Discrimination

■ Appellant also relies on the Baldus study and McMahon tape to support a generalized assertion that his death sentence was a product of improper racial discrimination and violates the Pennsylvania sentencing statute, the Pennsylvania Constitution, and the United States Constitution. The PCRA court found this claim non-cognizable under the PCRA.

Appellant's claim fails. He did not raise this claim before the trial court or on appeal. Thus, it is waived. Although he alleges that the bases for these claims were not reasonably available to counsel, he does not invoke the PCRA provision governing after-discovered evidence or attempt to construct such an argument. *See* 42 Pa.C.S. § 9543(a)(2)(vi). In addition, Appellant again fails to make any particularized showing of racial discrimination in his own trial. As noted, we have specifically rejected such vague claims as a basis for relief. *Wharton*, 571 Pa. 85, 811 A.2d 978.

### X. Progression Charge

■ Appellant next argues that trial counsel was ineffective for failing to object to the trial court's progression charge, which instructed jurors to consider the most serious charge of criminal homicide before moving on to any lesser charges. In providing this progression charge, Appellant argues the trial court required a finding of not guilty on the greatest offense before the jury could consider any lesser degree of murder, thereby leaving jurors who may have a reasonable doubt about his guilt on a higher degree in a naturally coercive position, either having to convince the majority of their position or deadlocking the jury. In response, the Commonwealth argues that the charge was proper because, as the PCRA court found, although we have not specifically approved of the charge, the Superior Court has done so. *Commonwealth v. duPont*, 730 A.2d 970 (Pa.Super.1999), appeal denied, 561 Pa.

669, 749 A.2d 466 (2000); *Commonwealth v. Loach,* 421 Pa.Super. 527, 618 A.2d 463 (1992), appeal denied, 535 Pa. 655, 634 A.2d 219 (1993); *Commonwealth v. Hart,* 388 Pa.Super. 484, 565 A.2d 1212, 1217 (1989), appeal denied, 525 Pa. 642, 581 A.2d 569 (1990) (holding proper a progression charge where the defendant is charged with different forms or degrees of the same crime, because if the jury were first to consider a less serious form of the offense, it might return a verdict of guilty of the lesser charge without determining whether the Commonwealth also proved the additional facts necessary to establish the more serious crime).

Appellant cites no Pennsylvania or United States Supreme Court authority for the proposition that a progression charge violates due process, obliging counsel to object. Counsel cannot be deemed ineffective for failing to advance the change in the law. *See Commonwealth v. Bryant,* 579 Pa. 119, 855 A.2d 726, 748–49 (2004); *Rollins,* 738 A.2d at 451 ("[W]e will not deem counsel ineffective for failing to anticipate a change in the law."). Thus, because trial counsel could not have been ineffective for this reason, Appellant's claim of appellate counsel's ineffectiveness necessarily fails. *See McGill,* at 1023.[15]

Having found that Appellant has failed to establish the arguable merit of each of his claims of ineffective assistance of appellate counsel, we need not remand to review the remaining two prongs of *Pierce* with respect to that counsel. *See Rush,* at 657–58; *McGill,* at 1025.

### XI. Cumulative Effect of Sentencing Errors

 Appellant's next claim pertains to the penalty phase of his trial. He argues that the cumulative effect of three statements made by the prosecutor during his closing argument rendered the sentencing proceedings fundamentally unfair, and all prior counsel were ineffective for failing to object to or properly litigate this issue. On direct appeal, we rejected Appellant's claim that he was denied a fair penalty phase hearing by virtue of prosecutorial misconduct on the basis of

15. We express no opinion on the merits of the progression charge, as such issue is not directly before us in this PCRA proceeding.

five segments of the prosecutor's argument. This time, Appellant attacks three more segments of the prosecutor's argument. The PCRA court found this issue was not cognizable under the PCRA. The Commonwealth argues that this claim is previously litigated. We agree, and thus will not review Appellant's current attempt to relitigate this claim. To the extent Appellant raises a claim of ineffective assistance of counsel for failing to raise the three additional comments of which he currently complains, however, this claim is distinct and should be reviewed under the three-prong ineffectiveness standard. *Collins*, 585 Pa. 45, 888 A.2d 564.

Upon review, we conclude that once again, Appellant's claims lack arguable merit. As we noted on direct appeal,

> comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true penalty determination. Moreover, "[a]t the penalty phase, where the presumption of innocence is no longer applicable, the prosecutor is permitted even greater latitude in presenting argument. The prosecutor may 'present argument for or against the sentence of death' and may employ oratorical license and impassioned argument."

*Washington*, 549 Pa. 12, 700 A.2d 400, 414 (1997) (citations omitted).

 Appellant claims the prosecutor improperly urged the jury to shift the burden of proof by requiring the defense to prove that the mitigating circumstances outweigh the aggravating circumstances. In closing, the prosecutor stated:

> The Commonwealth has a burden to prove to the Jury that there is an aggravating circumstance which justifies the death penalty and the Defense has a burden to prove that there is—are mitigating circumstances to justify life. They have a burden and it is important to remember that because now they have to meet that burden. They simply can't come in here and make arguments and produce evidence and

throw something on the wall and hope that it sticks and you jurors come back and sentence him to life. They have to prove that he is entitled to be sentenced to life just like I have to prove that he should be sentenced to death. Keep that in mind because I will ask you to ask that question amongst yourselves. Have they met their burden? Have they proved to your satisfaction that there are any mitigating circumstances in this case, and if there are any, do those mitigating circumstances in any way outweigh the aggravating circumstances.

The Judge will give you the law on how you're to conduct yourselves when you go out and deliberate, and just like at the guilt phase, you're not going to be left to go out and wander aimlessly in the dark as to how you're to deliberate to reach a fair and a just verdict. There are rules and there are laws and there are guidelines, and the Judge will instruct you on.

N.T. 10/12/94, 9–10. Read in context, the prosecutor was informing the jury that Appellant has the burden of proving mitigating circumstances, which is true. *See* 42 Pa.C.S. § 9711(c)(1)(ii). He also informed the jury that the judge would charge them on the law, which he did. *See* N.T. 10/12/1994, 36–39. Because the prosecutor's comments in no way misrepresented the jury's duty, Appellant has not demonstrated that he was unduly prejudiced by the prosecutor's comments.

▪ Appellant also argues that the prosecutor improperly expressed a personal opinion that the testimony of Appellant's mother and grandmother did not constitute mitigating evidence. The prosecutor argued that the testimony of Appellant's grandmother regarding the Appellant's good character was flawed because she testified that she was not aware of how Appellant behaved when he was not around her. He also noted that Appellant's mother's testimony contradicted that of his grandmother. These comments were firmly based on the evidence. Further, it was entirely proper for the prosecutor to argue that Appellant had not met its burden of proving mitigation evidence. Trial counsel, therefore, had a reason-

able basis not to object, and appellate counsel cannot be ineffective for failing to raise this issue on direct appeal.

■ Next, Appellant argues that the prosecutor improperly stated that no mitigation evidence had been proved, which should make the jury's job easier. In context, the prosecutor was simply arguing that no mitigating circumstances had been proved: "I ask you based upon the evidence to find no mitigating circumstances. Make your job easier." We cannot conclude that this comment rendered the jury incapable of objectively weighing the evidence. Additionally, the jury found evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense pursuant to 42 Pa.C.S. § 9711(e)(8). Appellant once again fails to demonstrate how the prosecutor's comment prejudiced him.

## XII. Jury Instruction on Mitigating and Aggravating Circumstances

■ In another layered claim of ineffectiveness, Appellant argues that the trial court erred in instructing the jury concerning aggravating and mitigating circumstances, thus preventing the jury from considering and giving full effect to relevant mitigation evidence. Specifically, he complains of the following portion of the jury instructions:

Generally speaking, aggravating circumstances are things about the killing and the killer which makes a first degree murder case more terrible and deserving of the death penalty. While mitigating circumstances are those things which make the case less terrible and less deserving of death.

N.T., 10/11/1994, at 52. In addition, the trial court charged the jury as follows:

The law requires that your sentence depends upon what you find about aggravating and mitigating circumstances. The sentencing code defines aggravating and mitigating circumstances, things that make a first degree murder case more terrible or less terrible.

N.T., 10/12/1994, at 36. Appellant argues that this instruction improperly restricted the weight the jury would give to mitigating evidence that did not affect the "terribleness" of the offense. Appellant contends trial counsel and appellate counsel were ineffective for failing to raise and litigate this issue.

The PCRA court found this claim waived and without merit. Once again there is no need to remand for further development of appellate counsel's ineffectiveness because the underlying issue lacks merit. The instructions, read as a whole, were proper. The trial court is allowed considerable discretion in phrasing instructions as long as they adequately convey the law. *Prosdocimo,* 525 Pa. 147, 578 A.2d 1273. In fact, Pennsylvania Standard Criminal Jury Instruction 15.2502F(1) describes aggravating and mitigating circumstances as "things that make a first-degree murder case either more terrible or else less terrible." Additionally, we have rejected the claim Appellant now advances, declining to find that the trial court instructions,

> as a whole, interfered with the jury's evaluation of the specific mitigation evidence presented by Appellant or their assessment of his personal moral culpability. These instructions merely expressed to the jury, in laymen's terms, the purpose for the distinction between aggravating and mitigating circumstances in a capital penalty phase.

*Commonwealth v. Johnson,* 572 Pa. 283, 815 A.2d 563, 588 (2002); *Commonwealth v. Stevens,* 559 Pa. 171, 739 A.2d 507, 526–27 (1999).

## XIII. Failure to Investigate and Present Mitigation Evidence

Next, Appellant argues that trial counsel rendered ineffective assistance during the penalty phase by failing to offer readily available evidence of Appellant's "organic dysfunction, child abuse, family dysfunction and violence, cocaine abuse and limited intellectual functioning." At the penalty phase, trial counsel presented mitigation evidence including testimony by Appellant's mother, grandmother, and brother concerning his history of childhood abuse. Through his

grandmother's testimony, the jury heard that Appellant's mother abandoned him as a child, that his grandmother unsuccessfully tried to obtain custody after Appellant's mother and stepfather took him back at age five, that Appellant tried to escape from his mother's custody to avoid his stepfather's abuse, and that Appellant always treated her well. Appellant's mother told the jury that Appellant's stepfather was a drug-addict, highly abusive and that she often took her children to shelters to escape the abuse.

Drawing from several sources, including declarations of his sister, mother and grandmother, a 1990 pre-sentence report, a 1994 pre-sentence report, and a 1999 psychological evaluation conducted by Dr. Claire Barabash, Appellant describes his upbringing as a traumatic one, characterized by violent abuse, rejection, and abandonment. Appellant asserts that such records establish his mental illness and abusive upbringing as a mitigating factor, and would have been available to trial counsel had he properly investigated and prepared the case for mitigation.[16] The PCRA court found this claim waived, and also noted that the purported evidence of abuse was presented at the penalty phase through the testimony of Appellant's mother and grandmother, so that Appellant was not prejudiced by counsel's failure to offer the proffered evidence.

Any allegation of trial counsel ineffectiveness is waived. There is no need to remand for further development of the layered claim of ineffectiveness, moreover, because Appellant has not demonstrated the merit to the underlying claim of trial counsel ineffectiveness. Because Appellant alleges that trial counsel should have uncovered evidence of his abusive upbringing and mental illness, we discuss these two categories of mitigation evidence separately.

First, trial counsel presented evidence of Appellant's abusive upbringing through the testimony of Appellant's mother, grandmother, and brother. The jury still sentenced him to death. The post-trial declarations supplied by his mother,

---

**16.** Appellant does not identify which mitigating circumstances this evidence would have supported.

grandmother, and sister offer no new evidence in this regard. Appellant has not demonstrated that had the jury heard more, cumulative evidence of his abusive upbringing, they would have changed their minds. Therefore, Appellant has not demonstrated prejudice by counsel's failure to discover and advance additional, cumulative evidence.

Second, Appellant alleges a history of mental illness resulting from his abusive upbringing, as demonstrated by a 1990 pre-sentence report by Dr. Saul, which Appellant asserts demonstrates drug abuse, family instability, dysfunction, and "mixed character disorder with Schizoid elements," a 1994 pre-sentence report, and a 1999 report by Dr. Barabash. Dr. Barabash concluded that Appellant's history of abuse and neglect is "significant for serious mental disorder, along with indications of an organic brain dysfunction," and that Appellant suffers from extreme intellectual deficits and emotional instability that were present at the time of the offense, which substantially impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Psychological Evaluation of Dr. Barabash, December 10, 1999.

Appellant's claim fails for several reasons. First, regarding the Barabash report, this psychological evaluation was performed in 1999, almost seven years after Appellant committed the murder, and was thus unavailable to trial counsel in 1994. Further, the report is based on information provided in 1999 and has no connection to Appellant's mental health in 1994. In fact, Dr. Barabash does not state that she has any knowledge of Appellant's mental health at the time of the offense. Thus, this report cannot form the basis for a finding of ineffectiveness.

Second, to the extent these reports indicate child abuse, such information was already known to trial counsel and presented at trial. Finally, and most importantly, Appellant has not even attempted to demonstrate the unreasonableness of trial counsel's investigation. In *Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 784 (2004), we explained that

our principle concern in deciding whether [counsel] exercised reasonable professional judgment is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [appellant's] background was itself reasonable.

*Malloy*, 856 A.2d at 784. *See also Collins*, 888 A.2d at 580. We acknowledged that "[c]ounsel's duty is to discover [mitigating] evidence through his own efforts, including pointed questioning of his client." *Malloy*, 856 A.2d at 788. We also made clear, however, that counsel's investigation is dependent in part upon the information supplied by the appellant. *Id.* In *Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139 (2005), we were again asked to consider the reasonableness of counsel's investigation and presentation of mitigation evidence at the penalty phase. Because the record at the time of trial indicated that the appellant did not suffer from any mental illness or abuse that would have prompted counsel to conduct a further investigation, we noted that the information available to trial counsel did not alert counsel to investigate further such issues. *Brown*, 872 A.2d at 1150.

The evidence that Appellant claims should have prompted further investigation by trial counsel is the 1990 pre-sentence report, completed in connection with an unrelated crime. Appellant, however, has not demonstrated that trial counsel lacked a reasonable basis for not investigating further evidence of Appellant's "character disorder with Schizoid elements." He has not included an affidavit from trial counsel explaining his lack of investigation.

A review of the record reveals that trial counsel could have reasonably concluded that any indication of mental illness in the 1990 report was negated by the further findings in the 1990 report that there was no evidence of delusion, that Appellant's social judgment was within acceptable limits, that he suffered from no psychosis, and did not need psychiatric treatment at that time. Further, the 1994 report, completed in connection with the penalty phase, indicated that Appellant actually denied that he had any "medical, neurological, and

suicidal history," and the doctor determined that he had "[n]o psychotic symptoms," and "does not suffer from a major psychiatric disorder." Pre-sentence Report, December 2, 1994. Counsel's investigation properly depends in part upon the information supplied by Appellant, *Malloy,* 856 A.2d at 788, and here Appellant told the pre-sentence investigator in 1994 that he had no history of mental illness. Based on this record, Appellant has not demonstrated that trial counsel should have conducted further investigation because the information available to trial counsel did not alert him to investigate further. *Brown,* 872 A.2d at 1150. We have stated that we will not find counsel ineffective for failing to produce mitigating evidence relative to an alleged mental infirmity when counsel has no reason to suspect that the defendant might have a mental problem. *See Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 448 (1999); *Commonwealth v. Howard,* 553 Pa. 266, 719 A.2d 233, 238 (1998); *Commonwealth v. Uderra,* 550 Pa. 389, 706 A.2d 334 (1998). As Appellant has failed to allege, let alone prove, that trial counsel was aware of Appellant's alleged mental condition, especially given his subsequent assertion that he had no mental history, we deny him relief on this issue.

## XIV. Proportionality Review

Next, Appellant argues that his death sentence must be vacated because the proportionality review conducted by this Court on direct appeal did not provide meaningful appellate review as required by 42 Pa.C.S. § 9711(h)(3)(iii) and the Pennsylvania and United States Constitution. Appellant argues that

insofar as the Court relied upon the Administrative Office of the Pennsylvania Courts (AOPC) database in reaching its conclusions in [Appellant's] case, the Court's conclusion rests upon unreliable and faulty information. Insofar as the Court did not rely upon the AOPC database, or relied upon information external to the AOPC database, the Court's conclusions are likewise faulty.

Appellant's Brief at 94. Appellant does not specify what information was faulty or unreliable, or how it was so.

The PCRA court found this claim not cognizable under the PCRA. On direct appeal, we conducted review of Appellant's sentence pursuant to 42 Pa.C.S. § 9711(h)(3), which requires us to affirm the judgment of sentence unless we determine that

> (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;
>
> (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or
>
> (iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3). Upon review of the record, we concluded that the sentence was not the product of passion, prejudice, or any other arbitrary factor, but was based upon evidence properly admitted at trial. We then reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the AOPC and concluded that the sentence of death imposed upon Appellant was not excessive or disproportionate. *Washington,* 700 A.2d at 416–17. Thus, this claim was previously litigated on direct appeal and is not cognizable under the PCRA. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 708 (1998) (finding, on collateral review, that because "[t]his court has already fulfilled its statutory obligation to review Appellant's sentence for proportionality and ruled against him," this issue is beyond the purview of the PCRA because it was previously litigated). Therefore, the PCRA court properly denied Appellant relief on this claim.

## XV. Cumulative Errors

Next, Appellant argues that he is entitled to relief from his conviction and sentence because of the cumulative effect of the trial and appellate errors. However, as this Court has repeatedly held, no number of failed claims may collectively warrant relief if they fail to do so individually.

*Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 548 (2006); *Rollins*, 738 A.2d at 452; *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716, 722 (1992).

## XVI. Evidentiary Hearing

Finally, Appellant asserts that his claims entitle him to an evidentiary hearing. Pennsylvania Rule of Criminal Procedure 909 gives the PCRA court discretion to dismiss a PCRA petition without an evidentiary hearing "[i]f the judge is satisfied ... that there are no genuine issues concerning any material fact ... and no legitimate purposes would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). Rather than addressing the genuine issues concerning any material fact or pointing out the legitimate purpose a hearing would serve, Appellant baldly asserts that his claims "show that he has made out material issues of fact which, when proved at a hearing, would entitle him to relief." Appellant's Brief at 97. As we find that none of Appellant's issues raise a genuine issue of material fact, he is not entitled to an evidentiary hearing.

The decision of the PCRA court is affirmed in all respects.[17]

Chief Justice CAPPY and Justice CASTILLE, EAKIN and FITZGERALD join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice BALDWIN joins.

Justice SAYLOR, dissenting.

I depart from the majority on several points.

First, although the majority deems Claim IA (pertaining to the Teagle affidavit) waived based upon a technical defect in Appellant's supplemental PCRA pleading, the PCRA court's pre-dismissal notice did not identify this defect as a basis for dismissal.[1] Indeed, the court's notice of its intent to dismiss

17. The Prothonotary of the Supreme Court is directed to transmit a full and complete record of these proceedings to the Governor in accordance with 42 Pa.C.S. § 9711(i).

1. At Appellant's trial, the identity of the shooter was a contested issue. Consistent with the Commonwealth's position that Appellant was the

consisted of a form document with an 'X' marked on the line entitled, "The issues raised in the PCRA Petition filed by your attorney are without merit." In my view, this did not constitute adequate pre-dismissal notice so as to provide a realistic opportunity for Appellant to amend his petition to come into conformance with the applicable rules. *See* Pa.R.Crim.P. 909(b)(2).[2] It is also notable that the pre-dismissal notice is dated February 5, 2001, whereas the supplemental pleading which contained the Teagle affidavit was filed three weeks later. Additionally, although, in its opinion, the PCRA court acknowledges the filing of the supplemental petition, *see* PCRA Court op. at 2, it makes no mention of any of the affidavits filed with the supplement—including the Teagle

shooter, Teagle admitted to being present at the scene, but denied being the shooter. Teagle was ultimately convicted of second-degree murder and sentenced to life imprisonment, and Appellant was convicted of first-degree murder and sentenced to death. Teagle now claims that he, and not Appellant, was the shooter, and that he falsely testified otherwise in order to avoid the death penalty. *See* Affidavit/Declaration of Derrick Teagle, at 1 ¶ 2.

**2.** *See, e.g., Commonwealth v. D'Amato*, 579 Pa. 490, 522 n. 19, 856 A.2d 806, 825 n. 19 (2004) ("The PCRA court did note that all of the purported after discovered evidence was 'improperly presented in the form of a Response, rather than an amendment.' However, this technical defect cannot be controlling here because the pre-dismissal notice did not identify it as a basis for the denial of relief, and hence, Appellant was not afforded an opportunity to cure it." (citation omitted)); *Commonwealth v. Santiago*, 579 Pa. 46, 70 n. 14, 855 A.2d 682, 696 n. 14 (2004) (observing that a remand to the PCRA court may be necessary absent adequate pre-dismissal notice); *Commonwealth v. Rush*, 576 Pa. 3, 14–15, 838 A.2d 651, 658 (2003) (explaining that this Court's criminal procedural rules require PCRA courts to provide a capital defendant with specific pre-dismissal notice of its reasons for dismissal so that the defendant has a reasonable opportunity to amend defects in the petition); *Commonwealth v. Brown*, 574 Pa. 231, 233, 830 A.2d 536, 537 (2003) (*per curiam* ) (vacating and remanding to the PCRA court, in part, due to inadequate pre-dismissal notice, the sufficiency of which is an "essential predicate for appellate review of the post-conviction proceedings by this Court"); *Commonwealth v. Wharton*, 571 Pa. 85, 107, 811 A.2d 978, 991 (2002) (Saylor, J., concurring) (highlighting the salutary effect of the rule requiring adequate pre-dismissal notice in terms of timely exposing ineffective assistance of PCRA counsel in the framing of post-conviction claims, thereby "providing some reasonable assurance that the single opportunity for review left available to a post-conviction petitioner in the courts of this Commonwealth may be a meaningful one").

affidavit—and its only reference to after-discovered evidence pertains to police records made at the time of the underlying offenses. *See id.* at 14. Thus, it is unclear whether the PCRA court treated the supplement as an amendment to the original petition or in some other manner. For these reasons, rather than disposing of this claim on the grounds articulated by the majority, I would remand with instructions to clarify whether the supplemental pleading was treated as an amendment to the timely PCRA petition, and if so, to provide notice with sufficient specificity to allow counsel to cure any technical deficiencies. If such cure is effected, then, of course, it is the obligation of the PCRA court, in the first instance, to evaluate the credibility of the Teagle evidence and its significance within the context of the trial record as a whole. *See D'Amato,* 579 Pa. at 522–23, 856 A.2d at 825–26; *Commonwealth v. Williams,* 557 Pa. 207, 233, 732 A.2d 1167, 1181 (1999).

I also have reservations concerning the majority's handling of Claim IB, concerning Martha Harrington's recantation affidavit. The majority notes that Appellant first argues that trial counsel was ineffective for not uncovering Ms. Harrington's alleged deception; it then proceeds to reject his second theory—that the affidavit constitutes after—discovered evidence-on the sole basis that, by arguing ineffectiveness, Appellant has already effectively conceded that Ms. Harrington's truthful testimony would have been discovered by the exercise of reasonable diligence. *See* Majority Opinion, *op.* at 718–19, 927 A.2d at 597–98. It is relevant, however, that Appellant frames his ineffectiveness and after-discovered evidence theories in the alternative, *see* Brief for Appellant at 25 ("Alternatively, Ms. Harrington's admissions constitute newly discovered evidence ...."), a widely accepted litigation technique. These claims should therefore be considered separately. *See generally Prewitt v. United States Postal Service,* 662 F.2d 292, 310 n. 25 (5th Cir.1981) (recognizing the acceptability of raising two mutually inconsistent legal theories in the alternative); *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.,* 219 F.3d 895, 905 (9th Cir.2000) (same); *Shearson Lehman Bros. v. Brady,* 783 F.Supp. 1490, 1494

(D.Mass.1991) (same); *United States v. Melenedez*, 70 Fed. R. Evid. Serv. 237, 2006 WL 1379624 *11 (S.D.N.Y.2006) ("[A] fallback argument or argument in the alternative does not require a concession, and could be presented, lawfully and without logical contradiction, while simultaneously pressing an argument for complete acquittal.").

As a separate matter, I would also specifically disapprove the prosecutor's remarks concerning the burden of proof in capital sentencing, *see* Majority Opinion, at 742–43, 927 A.2d at 612, because I do not believe that they accurately reflect the Commonwealth's and the defendant's respective burdens.[3]

Finally, I would expressly require a hearing concerning the derivative ineffectiveness claim relating to trial counsel's failure to develop mental-health and life-history mitigation at trial. As to the mental-health aspect, the majority faults Dr. Barabash's report because she "does not state that she has any knowledge of Appellant's mental health at the time of the offense." Majority Opinion, *op.* at 747, 927 A.2d at 615. The entire report, however, is obviously a forensic one derived from Appellant's life history before his capital crime, culminating in the conclusion that the various mental impairments described "constitute an extreme mental and emotional disturbance" and "substantially impaired his capacity to appreciate

**3.** For one thing, contrary to the prosecutor's representation, it simply is not true that the defendant has any burden of proof unless the Commonwealth first establishes at least one aggravating circumstance beyond a reasonable doubt. Additionally, the prosecutor misstated the jury's task by indicating that it must find the mitigating circumstances to "outweigh the aggravating circumstances" to impose a life sentence. To the contrary, if even one juror deems the mitigating and aggravating factors to be in equipoise, the sentence must be life. *See* 42 Pa.C.S. § 9711(c)(iv).

Along these lines, I am also more troubled than the majority by the prosecution's argument to the jurors that they should find no mitigation, and hence impose the death penalty, in order to "make [their] job easier." *See* Majority Opinion, *op.* at 744, 927 A.2d at 613. The jury must, of course, follow the law in determining whether to sentence a defendant to death, independent of considerations such as whether ignoring mitigating evidence might be an "easier" way to complete its task. I would require the PCRA court in the first instance to assess the effect of these improper statements in disposing of Appellant's layered ineffectiveness claim.

the criminality of his conduct or to conform his conduct to the requirements of law." Psychological Evaluation, at 5. Particularly as the only relevance of these conclusions would be to the mitigating circumstances concerning a defendant's mental condition and/or state at the time of a capital offense, I do not see how the report can be fairly read as speaking to anything other than just that. Further, as highlighted in the amended PCRA petition, it appears that certain records that may have been reasonably available to trial counsel indicated of Appellant that:

> There is ego impairment in terms of concreteness of thinking, excessive suspiciousness, and an inability to relate well to other people. I am diagnosing him with a Mixed Character Disorder with Schizoid elements and a history of drug abuse.

Mental Health Evaluation dated Oct. 30, 1990, at 2; *see* Amended Petition at 50. Given its potential significance in a capital case,[4] this seems to me to be enough to put counsel on inquiry notice concerning potential mental health mitigation evidence that would warrant a mental health examination. Further, I do not believe that it is the defendant's burden in every case to present an affidavit from his trial counsel discussing his performance to merit an evidentiary hearing, as, quite obviously, where counsel has not performed adequately, he may not be willing to cooperate. Finally, I disagree with the majority that an absence of self-reporting on the part of a criminal defendant of mental health deficiencies should obviate an investigation that is otherwise called for by information of which counsel should be aware. *See* Majority Opinion, *op.* at 748–49, 927 A.2d at 616. Capital counsel has the obligation to

**4.** As I have previously noted, there is fairly widespread consensus that the sort of mental-health and explanatory-type life-history mitigation evidence presently proffered by Appellant can serve as effective mitigation. *See generally Wiggins v. Smith,* 539 U.S. 510, 534–35, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 396, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000); *Allen v. Woodford,* 366 F.3d 823, 850–51 (9th Cir.2004) ("Defense counsel's use of mitigation evidence to complete, deepen, or contextualize the picture of the defendant presented by the prosecution can be crucial[.]"); *People v. Coleman,* 168 Ill.2d 509, 214 Ill.Dec. 212, 660 N.E.2d 919, 934 (1995) ("We acknowledge the critical importance of a defendant's background and mental health to the sentencing decision.").

pursue all reasonably available avenues of developing mitigation evidence. *Commonwealth v. Gorby*, 589 Pa. 364, 390, 909 A.2d 775, 790 (2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000)).

As to the life-history aspect, the weighing decision in a capital case by definition involves matters of degree, *see Commonwealth v. Brown*, 538 Pa. 410, 429, 648 A.2d 1177, 1186 (1994), and although life-history mitigation was introduced at Appellant's sentencing hearing, his post-conviction proffer contains a good deal more information. Particularly in light of the fact that the mental-health proffer expressly relates the life-history mitigation to specific mitigating factors, I believe that the post-conviction court should have entertained this evidence as well and made the requisite factual findings and legal conclusions concerning its impact. Although the PCRA court repeatedly stated that these proofs would not have changed the outcome of the trial, its findings in this regard are in the context of an undeveloped record and are set forth in a conclusory fashion with little or no supporting analysis. *See Commonwealth v. Washington*, Nos. 1037–1055 (PCRA), *slip op.* at 13 & n. 7, 16 (C.P.Phila., Oct. 24, 2001).

Justice BALDWIN joins this dissenting opinion.