**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Derek MURCHINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 6, 2005.

Filed May 8, 2006.

Michael E. Wallace, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, LALLY-GREEN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of first degree murder, possession of an instrument of crime ("PIC") and escape. Sentenced to life in prison without parole on the charge of murder,[1] Appellant raises challenges to the sufficiency of evidence to all charges and to a jury instruction. We affirm.

¶ 2 The trial court opinion pursuant to Pa.R.A.P.1925(a) provides a detailed factual and procedural history of the present case such that we incorporate it by reference.[2] We summarize the case, however, by noting that Appellant was arrested and charged with the October 4, 2001 murder of a female acquaintance ("the victim"), who was found lying dead in her home. Testimony established that Appellant was a friend and frequent visitor of the victim at the time and shared a crack cocaine habit with her. The two also collaborated in purchasing crack cocaine, whereby Appellant would smuggle clothing items from

---

1. The court imposed two to five years' imprisonment on PIC and one to two years' on escape, to run consecutively to one another, but concurrently to the murder sentence.

2. As addressed *infra,* we lack trial transcripts necessary to conduct an independent review of the present appeal. We therefore rely on the trial court's account of pertinent facts solely for purposes of providing a history of the case.

his place of employment and give them to the victim, who would sell them on the street for money and/or drugs.

¶ 3 One of the victim's tenants at the time in question testified that on October 4, 2001 at about 11:00 p.m. he was lying in his upstairs bedroom when he heard the victim twice call him from her living room, but the roommate assumed it was to ask him for money to buy crack, so he did not respond. The next day, the tenant twice walked by the victim's body as it lay on the couch, as he thought the victim was merely sleeping, but he learned the truth upon a closer look later that evening and phoned authorities.

¶ 4 An autopsy revealed that the victim died of manual strangulation inflicted over several minutes. Her face and body also bore scratches, abrasions, bruises, and blunt force trauma to the head consistent with her having been struck by the blood-covered wood board recovered from alongside the victim's body. Forensic tests returned a high statistical probability that the blood on the board belonged to the victim.

¶ 5 Also testifying at trial was Carolyn Hunt, mother to two of Appellant's children and the woman who introduced Appellant to the victim sometime between 1998 and 1999 when she was one of the victim's tenants. Hunt testified that Appellant came to her home sometime in January of 2002 to talk, and she escorted him away from their children and to her car because he appeared high on crack. According to Hunt, Appellant asked her what she knew of the victim's murder and then admitted that he had knocked the victim unconscious with a punch to the face on the night in question because she could not account for a shortage in either crack or money from one of their sales. When the victim regained consciousness, Appellant said, he strangled her and hit her in the head with a stick before leaving the house covered in blood. Hearing Appellant's story, Hunt demanded that Appellant leave her car, contacted a friend, and called police.

¶ 6 Another witness placed Appellant near the victim's house at about 2:00 a.m. of the night in question. Karen Thomas encountered Appellant carrying a tote bag bearing his employer's trademark, whereupon he admitted coming from "that bitch's," meaning the victim's, house, and asked Ms. Thomas if she knew where the victim sold the clothing. Ms. Thomas declined to answer him.

¶ 7 Appellant's roommate at the time testified that Appellant had not come home to their apartment during the weekend of October 4, 2001 and, when he did return, he had a black eye, fat lip, and scratches on his neck. When she asked how he was hurt, Appellant responded that he had fought with a man and a woman, and that he had hit the woman with a stick.

¶ 8 After his August 2, 2002 arrest, Appellant was placed in a police station interview room pending an interview with authorities when he removed several ceiling blocks, climbed into the framework, and replaced the ceiling blocks. Another detainee notified an officer of Appellant's actions, and Appellant was discovered crawling across the framework some 10 to 12 feet beyond the interview room. He agreed to come down only when officers threatened to shoot him with a Tazer gun.

¶ 9 Appellant was charged with criminal homicide comprising either first degree murder, third degree murder, or voluntary manslaughter, PIC, and escape. At the conclusion of evidence and over defense objection issued at side bar, the court indicated its intention to instruct the jury on voluntary intoxication and how such a condition may reduce a murder from first degree to third degree. The court so instructed the jury on voluntary intoxication.

The jury, however, returned a guilty verdict on first degree murder as well as on PIC and escape.

¶ 10 Appellant filed timely notice of appeal and, after this Court granted counsel's motion for reinstatement of the opportunity to file one, a timely Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal which raised three issues for review. The trial court filed both a Rule 1925(a) opinion dated 9/30/04 and a supplemental opinion dated 2/3/05 responding to the issues.

¶ 11 Of the three issues raised in Appellant's Pa.R.A.P.1925(b) statement, only two are presented in the "Statement of Questions Involved" portion of Appellant's brief. They are:

**I. WHETHER THE APPELLANT IS ENTITLED TO AN ARREST OF JUDGMENT SINCE THE COMMONWEALTH FAILED TO SUSTAIN ITS BURDEN OF PROVING THE APPELLANT'S GUILT OF THE CRIMES BEYOND A REASONABLE DOUBT.**

**II. WHETHER THE APPELLANT IS ENTITLED TO A NEW TRIAL AS A RESULT OF THE TRIAL COURT'S INSTRUCING THE JURY AS TO VOLUNTARY INTOXICATION, DRUGGED CONDITION, OR DIMINISHED CAPACITY OVER THE APPELLANT'S OBJECTION.**

Brief for Appellant at 4.

▮▮▮ ¶ 12 Initially, we note that the absence of the complete set of trial transcripts from June 9, 2004 through June 16, 2004 impedes our ability to review Appellant's claims. A review of both the certified record and docket sheet, moreover, yields that Appellant never filed an order or request for any notes of testimony to be transcribed and transmitted to this Court for his appeal in conformity with Pa.R.A.P. 1922. As Appellant has failed his appellate obligation of providing this Court with trial transcripts necessary to review his claims, we find his claims to be waived. *See Commonwealth v. Gillen*, 798 A.2d 225 (Pa.Super.2002); *Commonwealth v. Steward*, 775 A.2d 819 (Pa.Super.2001) (holding that an appellant is responsible to order all transcripts necessary for review).

▮▮▮ ¶ 13 Even if Appellant met his Rule 1922 obligation to provide us with necessary transcripts, we would apply Pa. R.A.P. 2119(a) to find waiver for Appellant's failure to develop meaningful argument with specific reference to the record in support of his claims. *See Commonwealth v. Heilman*, 867 A.2d 542, 546 (Pa.Super.2005) (recognizing that failure to provide "such discussion and citation of authorities as are deemed pertinent" may result in waiver); *Commonwealth v. Cornelius*, 856 A.2d 62 (Pa.Super.2004) (declining to review claim where there was limited explanation and development of the argument). In each of his sufficiency challenges against murder, PIC, and escape, respectively, Appellant recites boilerplate law, and then simply asserts that the evidence adduced at trial falls short of such law. For example, after setting forth the requisite elements of murder, Appellant engages in a maddening, Sisyphian exercise of presenting the same general pronouncements of law and undeveloped allegations of insufficiency five times over:

> A review of the evidence presented at trial in the instant matter discloses an absence of the callous disregard and recklessness of consequences required to find that the killing was a malicious one or that the appellant acted with the specific intent to kill. [citation omitted]. Moreover, the Commonwealth's reliance upon an inference of malice and the specific intent to kill from the fact of the shooting [sic] is misplaced under the facts of this case. [citation omitted].

Herein, the jury concluded that the appellant killed Linda Willis. The question raised is whether the act was inspired by malice and the specific intent to kill. In this case, the inference of malice and the specific intent to kill that normally arises from the actor's use of a deadly weapon upon a vital part of the body of the victim, absent further explanation, is negated by the evidence presented in this case. [citation omitted]. In this matter, the Commonwealth's evidence establishes that the killing of Willis was not attendant by those factors ordinarily present in first-degree murder cases. While the evidence may be insufficient to establish murder of the first, it may, however, have supported a verdict of murder of the third degree or voluntary manslaughter. [citation omitted].

Clearly absent in this matter is any evidence of the appellant's specific intent to kill. The evidence is totally lacking to sustain a finding that the appellant acted with malice in the incident that resulted in Willis's death necessary for a conviction of murder of the first degree. At most, the appellant's actions arise to third-degree murder.

Under these circumstances, the evidence is insufficient to sustain the appellant's conviction for murder of the first degree. Accordingly, the appellant is entitled to an arrest of judgment as to this verdict of guilt.

Brief for Appellant at 16–18.

■ ¶ 14 Comparatively concise, but no more developed, are Appellant's sufficiency challenges to PIC and escape. Against his PIC conviction, Appellant contends that the Commonwealth

> failed, however, to prove beyond a reasonable doubt that a board or stick was used in the assault of Willis. The cause of death was manual strangulation. The Commonwealth's evidence suggested, but did not prove beyond a reasonable doubt that the appellant used or a [sic] possessed a board or that a board or stick is an instrument of crime under [the PIC statute].

Brief for Appellant at 19. Again, Appellant offers no specific evidence or caselaw to support his claim, and he appears to argue under the misapprehension that the subject instrument of crime needs to have been a murder weapon. Against his escape conviction, Appellant contends that his mere hiding in the ceiling did not constitute escape. No reference to testimony or caselaw accompanies his bare claim. Accordingly, we would find that Appellant has waived all three sufficiency challenges by operation of Pa.R.A.P. 2119(a).

■ ¶ 15 Finally, were we to address Appellant's challenge against the trial court's instruction on voluntary intoxication, drugged condition, or diminished capacity over defense objection, we would find it without merit. Appellant correctly notes that a trial court cannot assume an advocate's function of introducing theories which were not raised by the parties and resisted by a party. *See Commonwealth v. Fleck*, 372 Pa.Super. 546, 539 A.2d 1331 (1988). In *Fleck*, however, the trial court's instruction introduced a new theory that permitted the jury to reach a "compromise" verdict downgrading the offense charged and thus creating an alternative to complete acquittal. The jury, in fact, returned with a guilty verdict on the downgraded offense. We noted that "at no time before or during the trial was appellant alerted to the possibility that he would have to defend against [the downgraded charge]." *Id* at 1332. Because the instruction denied the defendant the opportunity to prepare a defense against the new charge, and usurped the Commonwealth's role of selecting charges and prosecuting them at trial, we vacated sentence and remanded for new trial.

¶ 16 Here, however, the certified record shows that Appellant was charged with criminal homicide encompassing a charge of third degree murder such that he was put on notice that a third degree murder theory may arise at trial. Perhaps more significant, Appellant was nevertheless convicted of first degree murder. This result effectively undermines his position that he was prejudiced by the contested instruction. As such, Appellant's case is clearly distinguishable from *Fleck*.

¶ 17 For the foregoing reasons, we affirm judgment of sentence.

¶ 18 Judgment of sentence affirmed.