J-S27022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT JERMAINE BAILEY | : | |
| | : | |
| Appellant | : | No. 1159 WDA 2020 |

Appeal from the PCRA Order Entered September 25, 2020
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000177-2015

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                 **FILED: NOVEMBER 29, 2021**

Appellant Robert Jermaine Bailey appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition.  Appellant contends that his trial counsel was ineffective for failing to object to certain witness testimony, impeach a witness with *crimen falsi* convictions, retain a firearms expert, raise a **Brady**[2] violation, and preserve issues for direct appeal.  We affirm.

A previous panel of this Court summarized the underlying facts of this matter as follows:

> Appellant's convictions stem from an altercation he had with two women, Tiffany Presher and Jennifer Colina, who were staying at

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

the same residence as Appellant and another man, Daniel Brown. According to Presher's trial testimony, [on May 24, 2015,] she and Colina were sleeping in a bedroom when Appellant, who had been cleaning another room in the home, entered the bedroom and began screaming at the two women "to get up and help clean. . . ." Presher claimed that Colina started arguing with Appellant, and Colina then tried calling 911 twice, but got disconnected both times. Colina also tried to record Appellant yelling at them, at which point Appellant smacked [Colina's] arm and knocked the phone out of her hand.

Colina then told Appellant she was going to call the police, at which point Appellant left the room and immediately came back in with a little black handgun. Appellant pointed the gun in the direction of Presher and Colina and told the women that if they called the police, "he was going to shoot [them] in [their] faces." Presher stated that as Appellant pointed the gun at her, she was scared. [Presher] also testified that as she and Colina tried to leave the house, Appellant told them that if they went to the police and he was arrested, he "was going to send the word to the street for [them] both to get killed." Presher testified that she and Colina escaped the house and began walking toward the police station, hiding between buildings as they went. Presher explained that Colina "was . . . scared to go to the cops," but as the women were walking, they saw a police officer, flagged him down, and told him what was going on. [Colina did not testify at Appellant's trial.]

That police officer was Bryan Smith of the Cumberland Township Police Department. Officer Smith testified that when Presher and Colina stopped him and reported the above facts, he called for assistance and then traveled to the house where the incident occurred. There, he spoke with Daniel Brown, who told the officer that Appellant had left. Having been provided a description of Appellant by Presher and Colina, Officer Smith began canvassing the area. The officer spoke to neighbors who directed him to the back of a house where he encountered Appellant, who matched the description provided by Presher and Colina. Officer Smith announced his presence and told Appellant to stop, but Appellant ran through a yard and jumped over a fence at the back. Officer Smith pursued Appellant while repeatedly telling him to stop, but the officer lost sight of him in the nearby woods.

[Also during Appellant's trial, Alyssa Goldsberry testified that on May 24, 2015, she had found Appellant hiding outside the door to her apartment building under a tarp. Appellant asked Goldsberry

- 2 -

for help calling his girlfriend. She explained that she needed to charge her phone inside her apartment first. Goldsberry asked Appellant to wait outside, but as she entered her apartment, Appellant followed her in. Appellant tried to call his girlfriend using Goldsberry's phone but could not reach his girlfriend. Appellant asked Goldsberry for some clothes because his were dirty. Goldsberry gave him a change of clothes and a beanie hat. Appellant then left her apartment.]

Other officers who had responded to the scene also began searching for Appellant, who was eventually found inside the basement of a building that had several apartments attached to it and also a business. Appellant was placed under arrest and searched, which revealed a clear baggie containing marijuana in his pocket.

Meanwhile, Officer Smith received a radio report that Thomas Berry, who lived in a residence close to where the officer had first observed Appellant, had found a gun in his yard. Officer Smith went to Berry's home and secured the gun, which was in two separate parts lying in a corner . . . inside of Berry's fence in [the] yard. Officer Smith was shown the weapon at trial and identified it as the gun he had found in Berry's yard.

Berry also testified at Appellant's trial. He explained that on the day of the above-described incident, he heard a commotion outside and saw Officer Smith running through the yard yelling for someone to stop. When Officer Smith was out of sight, Berry saw that "something was [lying] by [his] fence that wasn't there just ten minutes ago" when he had been in his yard with his dogs. Berry went outside to look at the object and realized it "was a pistol[.]" He called 911 and Officer Smith returned to recover the weapon.

***Commonwealth v. Bailey***, 1086 WDA 2017, 2018 WL 4020009, at *1-2 (Pa. Super. filed Aug. 23, 2018) (unpublished mem.) (citations omitted and formatting altered).

By way of further background, the Commonwealth filed an information charging Appellant with two counts each of terroristic threats, recklessly endangering another person (REAP), and simple assault, as well as one count

- 3 -

of harassment[3] for the incident involving Presher and Colina. *See* Criminal Information, 6/19/15, at 6-8, 13 (unpaginated). The information also charged Appellant with burglary, criminal trespass, theft by unlawful taking, and receiving stolen property[4] with respect to the interaction with Goldsberry. *See id.* at 1, 3, 9, 10 (unpaginated). Lastly, the information charged Appellant with persons not to possess a firearm, carrying a firearm without a license, flight to avoid apprehension, possession of drug paraphernalia, and possession of a small amount of marijuana.[5] *See id.* at 2, 4-5, 11-12 (unpaginated).

Prior to trial, during a conference in chambers, the Commonwealth moved to admit a recording of the police interview with Appellant following his arrest. Appellant objected because during the questioning, he made references to his prior criminal record. The trial court ruled that the recording was not to be played, but the officers involved in the questioning could testify about Appellant's statements that "[Appellant] was in possession of a gun . . . . . [t]hat he did not deny the possession of marijuana. . . . [a]nd that he indicated that he ran from [the police] and was faster than them[.]" N.T.

---

[3] 18 Pa.C.S. §§ 2706, 2705, 2701(a)(3), and 2709(a)(1), respectively.

[4] 18 Pa.C.S. §§ 3502(a)(2), 3503(a)(1)(ii), 3921(a), and 3925(a), respectively.

[5] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 5126(a), 35 P.S. §§ 780-113(a)(32), and 780-113(a)(31)(i), respectively. Prior to trial, the Commonwealth withdrew the count of flight to avoid apprehension. N.T. Trial, 1/26/16, at 36-37.

Trial, 1/26/16, at 21-22; *see also* Order, 1/28/16, R.R. at 55a.[6],[7]  Also, during the pre-trial conference, trial counsel stated he did not have an opportunity to inspect the gun prior to trial.  N.T. Trial, 1/26/16, at 26.  The Commonwealth explained that the firearm was at a lab, not at the Cumberland Township Police Department, and was on its way to the courthouse.  *Id.* at 28-29.  After the conference in chambers, trial counsel was permitted to inspect the firearm prior to opening statements.  *Id.* at 42-45.

During Appellant's trial, Officer Smith testified that he obtained a search warrant to recover the beanie Appellant was wearing on the day he was arrested.  *Id.* at 139.  Officer Smith stated that he went to the Greene County Prison to retrieve the hat because "[i]t's what [Appellant] wore into jail."  *Id.*  Appellant's trial counsel objected and the trial court issued a cautionary instruction that the jury should not consider Appellant's pre-trial detention when determining his guilt.  *Id.*

Officer Thomas Obarto[8] testified that after Appellant was arrested and transported to the Cumberland Township Police Station, Officer Obarto read Appellant the *Miranda*[9] warnings.  *Id.* at 165.  Officers Obarto and Smith

_____

[6] The trial court's oral order was reduced to writing and filed on January 28, 2016.

[7] We may refer to the reproduced record for the parties' convenience.

[8] Officer Obarto's last name is spelled as "Obarto" or "O'Barto," in the record and in the parties' briefs, but the correct spelling appears to be "Obarto."  *See* N.T. Trial, 1/26/16, at 160.

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

testified that while Officer Obarto was questioning Appellant, Appellant repeatedly threatened to kill Officer Obarto and a police dog. *Id.* at 142, 166. Trial counsel did not object to any of these statements. *Id.*

Officer Obarto also testified regarding the firearm that Officer Smith recovered from Berry's yard. *Id.* at 167-68. Officer Obarto described the firearm as the one that Appellant "discarded . . . as he left the residence." *Id.* at 167. Officer Obarto explained the functions of several parts of the firearm, including the slide, trigger, firing pin, and magazine. *Id.* Officer Obarto concluded that the firearm was not operable in its current condition, but it could be made operable with a replacement firing pin, either ordered from the manufacturer or improvised out of a nail. *Id.* at 168, 170. On cross-examination, trial counsel asked Officer Obarto if he could explain the functions of various components of the firearm. *Id.* at 170-74. Officer Obarto explained that while he was familiar with firearms, he was "not an armorer[]" and could not explain the function of every part. *Id.* at 172; *see also id.* at 174 (Officer Obarto stated "[a]gain, sir, you're asking me questions that an armorer can answer and I'm not an armorer"). Officer Obarto repeated his previous conclusion that "this weapon is not functional as it sits." *Id.* at 174.

Ultimately, on January 26, 2016, the jury convicted Appellant of one count each of burglary, persons not to possess a firearm,[10] possession of a

---

[10] The jury found that Appellant possessed a firearm. N.T. Trial, 1/26/16, at 223. The trial court subsequently found Appellant guilty of persons not to possess a firearm. *Id.* at 227-28.

small amount marijuana, and harassment, as well as two counts each of terroristic threats, REAP, and simple assault. The jury acquitted Appellant of the remaining charges.

The trial court initially sentenced Appellant to an aggregate term of eight to sixteen years' incarceration. Patrick Fitch, Esq. (trial counsel) represented Appellant at trial and at his initial sentencing. However, upon consideration of Appellant's post-sentence motions, the trial court granted Appellant's motions for judgment of acquittal with respect to burglary and the two counts of REAP.[11] The trial court appointed Kevin Thomas Freyder, Esq. to represent Appellant at resentencing. Ultimately, the trial court resentenced Appellant to an aggregate term of five to ten years' incarceration. Appellant timely appealed.

Attorney Freyder continued to represent Appellant on direct appeal. On appeal, Appellant argued, among other issues, that the trial court erred in allowing Officer Obarto to give expert testimony about the firearm involved in this case without first qualifying the officer as an expert. **Bailey**, 2018 WL

_____

[11] On September 2, 2016, the trial court granted Appellant's post-sentence motion for a judgment of acquittal with respect to the count of burglary. On December 6, 2016, the trial court appointed Attorney Freyder as Appellant's counsel. The trial court resentenced Appellant to an aggregate term of five to ten years' incarceration on January 17, 2017. Appellant again filed a timely post-sentence motion. The trial court granted Appellant's second post-sentence motion in part, entering judgments of acquittal with respect to the two counts of REAP, and denying it in all other respects on May 9, 2017. The trial court again sentenced Appellant to an aggregate term of five to ten years' incarceration on May 24, 2017. Appellant then filed a third post-sentence motion, which the trial court denied on June 7, 2017.

4020009 at *2.  This Court determined that Appellant waived this issue because he did not object to the officer's allegedly improper opinion testimony at trial.  *Id.* at *3.  Appellant also argued that the evidence was insufficient to convict him of offenses related to Colina.  *Id.* at *2.  However, this Court found that Presher's testimony was sufficient to sustain the convictions related to Colina.  *Id.* at *4-5.  This Court affirmed Appellant's judgment of sentence on August 23, 2018.  *Id.* at *8.  Appellant did not file a petition for allowance of appeal with our Supreme Court.

On August 23, 2019, Appellant filed a timely *pro se* PCRA petition raising claims of ineffective assistance by both trial counsel and appellate counsel.  The PCRA court subsequently appointed Benjamin Goodwin, Esq. (PCRA counsel) to represent Appellant, and he filed an amended petition on Appellant's behalf.[12]  Therein, Appellant argued that trial counsel was ineffective for failing to object to testimony from multiple witnesses, procure a firearms expert, impeach a witness with *crimen falsi* convictions, and

_____

[12] Unaware that Appellant had filed a *pro se* PCRA petition, Attorney Freyder filed a PCRA petition on Appellant's behalf on September 23, 2019.  In the counseled petition, Appellant argued that trial counsel was ineffective for not objecting to the testimony about Colina's statements, Officer Obarto giving expert testimony about the firearm when he had not been qualified as an expert, and the admission of the firearm at trial as a **Brady** violation, among other claims.  PCRA Pet., 9/23/19, at 11-18, R.R. at 334a-41a.  Appellant subsequently filed a *pro se* motion for leave to amend, asserting a claim of ineffectiveness against Attorney Freyder on October 9, 2019.  Following a hearing on December 12, 2019, Attorney Freyder was permitted to withdraw, and the PCRA court appointed Attorney Goodwin to represent Appellant.  Attorney Goodwin's amended petition incorporated the claims raised in Attorney Freyder's petition.  **See** R.R. at 362a.

preserve issues for direct appeal. Addendum to PCRA Pet., 5/18/20, at 1-3 (unpaginated), R.R. at 362a-64a.

### PCRA Evidentiary Hearing

The PCRA court held an evidentiary hearing on August 31, 2020. At the hearing, trial counsel confirmed that he did not object to testimony about Appellant being taken to jail, Appellant's identification by another police department, Appellant discarding a firearm in a yard, or referencing Colina's out-of-court statements. N.T. PCRA Hr'g, 8/31/20, at 18, 22-24. However, PCRA counsel did not ask trial counsel to explain why he did not object to these statements. *Id.*

With respect to the firearm that was admitted into evidence, trial counsel testified that he did not see an expert report regarding the firearm in the discovery materials. *Id.* at 11-12. Nor did he retain a firearms expert to examine the gun prior to trial. *Id.* at 12. Trial counsel did not request to inspect the firearm prior to trial, but he did have an opportunity to examine the firearm on the day of the trial, and that he was familiar with firearms. *Id.* at 8, 12. Trial counsel explained that he did not object to the admission of the firearm because it was his understanding that it was not functional, which was an element of one of the charges against Appellant, and was, therefore, helpful to his case. *Id.* at 12, 14.

Trial counsel also acknowledged that Officer Obarto was not an expert witness. *Id.* at 8-9, 12-13. Trial counsel explained his strategy was to extensively cross-examine Officer Obarto about the functions of different parts

of the firearm. *Id.* at 8, 13-14. Trial counsel explained that eventually "[the officer] finally threw his hands up and said the gun didn't work. That's exactly what I wanted." *Id.* at 13.

On September 25, 2020,[13] the PCRA court denied Appellant's PCRA petition. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) opinion adopting both the August 29, 2017 Rule 1925(a) opinion from Appellant's direct appeal and the September 25, 2020 order dismissing the instant petition.

Appellant raises twelve issues for our review, which we have reordered and summarized as follows:

1. Trial counsel was ineffective for not objecting to testimony that Appellant had been taken to jail.

2. Trial counsel was ineffective for not objecting to testimony that a neighboring police department identified Appellant because it implied Appellant had a prior criminal record.

3. Trial counsel was ineffective for not objecting to testimony that Appellant discarded a firearm in a yard as speculative.

4. Trial counsel was ineffective for not objecting to testimony about the statements of Colina as hearsay, more prejudicial than probative, and a violation of his right to confrontation.

5. Trial counsel was ineffective for not objecting to testimony that Appellant threatened to kill a police officer and a police dog during his custodial interrogation.

---

[13] We have amended the caption of this appeal to reflect the date of entry of the order. *See* Pa.R.A.P. 108(a)(1), (d)(1) (providing that the date of entry of an order is the date on which copies of the order are sent to the parties).

- 10 -

6. Trial counsel was ineffective for not investigating Goldsberry's criminal history and not impeaching her with a prior *crimen falsi* conviction.

7. Trial counsel was ineffective for not objecting to Officer Obarto's opinion testimony about the firearm because Obarto had not been qualified as an expert.

8. Trial counsel was ineffective for not retaining a firearms expert.

9. The PCRA court erred by relying on facts outside the record.

10. Trial counsel was ineffective for not raising a **Brady** objection regarding the Commonwealth's failure to make the firearm available for pre-trial inspection.

11. Trial counsel was ineffective for failing to preserve issues for appeal.

12. The cumulative prejudice of trial counsel's errors deprived Appellant of a fair trial.

Appellant's Brief at 2-7.

This Court has explained that

our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(citations omitted and formatting altered).

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim

- 11 -

is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, . . . 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (some citations omitted and formatting altered); *see also Commonwealth v. Becker*, 192 A.3d 106, 117 (Pa. Super. 2018) (explaining that "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued" (citation omitted)). Further, it is well settled

that "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." ***Commonwealth v. Washington***, 927 A.2d 586, 608 (Pa. 2007) (citation omitted).

**Counsel's Failure to Object**

In his first five issues, Appellant challenges trial counsel's effectiveness based on his failure to object to testimony from several witnesses. Specifically, Appellant refers to (1) Officer Smith's testimony that Appellant had been taken to jail; (2) Officer Smith's testimony that Appellant had been identified by another police department; (3) Officer Obarto's testimony that Appellant discarded a firearm; (4) testimony referencing out-of-court statements made by Colina; and (5) Officer Obarto's testimony that Appellant threatened the officers during his custodial interrogation. ***See*** Appellant's Brief at 26-33, 35-37, 47-51.

Initially, this Court has held that "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 783 (Pa. Super. 2015) (citation, footnote, and quotation marks omitted). Additionally,

> our Supreme Court has cautioned against finding no reasonable basis for trial counsel's actions in the absence of supporting evidence. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking.

***Id.*** at 783-84 (citations and quotation marks omitted).

On this point, our Supreme Court has explained:

- 13 -

Counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

Our recent decision in [**Commonwealth v. Lesko**, 15 A.3d 345 (Pa. 2011)] illustrates this point. There, the PCRA petitioner contended that trial counsel was ineffective for failing to request an appropriate limiting instruction when the trial court admitted evidence of the petitioner's prior bad acts. In rejecting the claim, we recognized that "it is well settled that the decision whether to seek a jury instruction implicates a matter of trial strategy." **Id.** at 401 (citations omitted). Because Lesko was given an evidentiary hearing and yet did not elicit from trial counsel his reasons for failing to request the cautionary charge, we concluded that Lesko failed to sustain his burden of demonstrating a lack of reasonable basis. **Id.** We held that because Lesko did not establish any ground for deeming counsel *per se* ineffective, and did not establish a lack of reasonable basis through trial counsel's testimony at the PCRA hearing, he failed to sustain his burden of proof. **Id.**

**Commonwealth v. Koehler**, 36 A.3d 121, 146-47 (Pa. 2012) (some citations omitted and formatting altered).

Here, our review of the record confirms that PCRA counsel failed to elicit testimony from trial counsel concerning his reasons for failing to object to the testimony in question. Because decisions on whether to object is a matter of trial strategy, Appellant failed to carry his burden of establishing that trial counsel lacked a reasonable basis for his actions because he did not question trial counsel about his trial strategy at the evidentiary hearing. **See Koehler**,

36 A.3d at 146-47; *Lesko*, 15 A.3d at 401. Therefore, Appellant is not entitled to relief on these claims.

**Failure to Impeach Goldsberry**

Appellant next argues that trial counsel was ineffective for failing to investigate Goldsberry's criminal record, discover she had a prior *crimen falsi* conviction, and use it to impeach her during trial. Appellant's Brief at 33-35. Appellant contends that trial counsel "had no reasonable basis as to not search for *crimen falsi* convictions for each of the Commonwealth's witness[es] and to present the convictions for consideration by the jury as to cast doubt on their testimony and thus the Commonwealth's case." *Id.* at 34-35. Appellant concludes that he "was prejudiced by trial counsel's failure to do so[,] as the jury could not consider the prior conviction for dishonesty in the weighing [of] the witness' testimony." *Id.* at 35.

Here, the PCRA court concluded that it was reasonable for trial counsel not to impeach Goldsberry, "as many parts of the testimony of Ms. Goldsberry were favorable to" Appellant. PCRA Ct. Order, 9/25/20, at 11-12. Further, the PCRA court concluded that even if trial counsel had impeached Goldsberry with a prior *crimen falsi* conviction, it would not have changed the outcome of the trial. *Id.* at 12.

Based on our review of the record, we agree with the PCRA court that Appellant has failed to demonstrate prejudice. Appellant was not convicted of

any offense related to Goldsberry's testimony.[14]   Therefore, he cannot establish that he was prejudiced by counsel's failure to investigate Goldsberry in order to impeach her with her prior *crimen falsi* conviction.  Accordingly, he is not entitled to relief on this claim.[15]   **See Sandusky**, 203 A.3d at 1044; **see also Washington**, 927 A.2d at 608.

### Firearms Evidence

Appellant's next three claims relate to the evidence that Appellant possessed a firearm.  First, Appellant argues that trial counsel was ineffective for failing to object to unqualified expert testimony from Officer Obarto. Appellant's Brief at 43-46.   Further, Appellant contends that the Commonwealth was required to present expert testimony to prove that the object recovered by police was a firearm for the purposes of 18 Pa.C.S. §§ 6102, 6105, and the National Firearms Act, because the statutory definition of a firearm is beyond the knowledge of the average lay person.  **Id.** at 46. Appellant claims that, in declining to object to Officer Obarto's testimony about the firearm, trial counsel "failed to require the Commonwealth to meet its

---

[14] We note that the jury acquitted Appellant of the charges of criminal trespass, theft by unlawful taking, and receiving stolen property, which all arose from his interaction with Goldsberry on May 24, 2015. Subsequently, on September 2, 2016, the trial court granted Appellant's post-sentence motion for a judgment of acquittal with respect to his burglary conviction, which also arose from incidents involving Goldsberry.

[15] Further, to the extent Appellant claims that trial counsel had no reasonable basis for his failure, Appellant failed to prove his burden because trial counsel was not questioned about that decision during the evidentiary hearing. **See Koehler**, 36 A.3d at 146-47; **Lesko**, 15 A.3d at 401.

burden to prove the elements of each crime beyond a reasonable doubt." ***Id.*** Appellant further claims that by failing to object to Officer Obarto's testimony, trial counsel waived this claim for appeal. ***Id.*** at 38-39 (citing ***Bailey***, 2018 WL 4020009 at *3); ***see also id.*** at 46.

Appellant also claims that trial counsel was ineffective for failing to retain a firearms expert to dispute Officer Obarto's testimony about the firearm. ***Id.*** at 51-52. He further contends that the PCRA court erred in relying on trial counsel's prior experience as a Secret Service Agent to conclude that trial counsel had a reasonable basis for not inspecting the firearm prior to trial and for failing to retain a firearms expert. ***Id.*** Appellant argues that "while trial counsel's experience may have given him knowledge beyond that of the average layman, statements by counsel are not substantive evidence . . . ." ***Id.*** at 51.

Pursuant to 18 Pa.C.S. § 6105, an individual who has committed one of the enumerated offenses may not "possess, use, control, transfer or manufacture . . . a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). For the purposes of Section 6105, "firearm" means "any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i). While the Commonwealth is required to prove the firearm is operable to convict a defendant of the offense of carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1), proof of operability is not required to convict under

Section 6105. *See Commonwealth v. Thomas*, 988 A.2d 669, 671-72 (Pa. Super. 2009).

This Court has held that the testimony of an eyewitness that the defendant possessed a firearm alone is sufficient to convict the defendant of carrying a firearm without a license, regardless of its operability. *See Commonwealth v. Robinson*, 817 A.2d 1153, 1161-62 (Pa. Super. 2003) (the victim's testimony that all three assailants who robbed her possessed guns was sufficient to establish that the defendant carried a firearm without a license, even though no firearm was recovered when the police apprehended the defendant).

Finally, our Supreme Court has stated that

the mere failure to obtain an expert rebuttal witness is not ineffectiveness. [An a]ppellant must demonstrate that an expert witness was available who would have offered testimony designed to advance [the] appellant's cause. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (citations omitted and some formatting altered).

Here, the PCRA court addressed Appellant's claims as follows:

[A]lthough Officer Obarto was not formally qualified as an expert witness, he was questioned about his knowledge of handguns generally and about the specific handgun possessed by [Appellant]. The officer had sufficient knowledge of handguns and sufficient knowledge of facts of the case and the line of questioning that elicited a description primarily focused on a description of the particular gun in the possession of [Appellant] was properly heard by the finder of facts.

- 18 -

PCRA Ct. Order, 9/25/20, at 10.

The PCRA court further stated that "[a]s the [PCRA c]ourt recalls and as confirmed by the trial transcript, we recognize that [trial counsel], a former [S]ecret [S]ervice agent was intimately familiar with the operation of firearms . . . . [Trial counsel] properly relied on cross-examination of a police officer in proving that the firearm was inoperative." *Id.* at 9-10; *see also* PCRA Ct. Op. 1/4/21, at 3 (stating that trial counsel's "cross examination was informed and effective at trial"). The PCRA court determined "that the questioning was particularly essential to the finder of the fact, when distinguishing the two separate gun related charges." PCRA Ct. Order, 9/25/20, at 11. Further, the PCRA court concluded that trial counsel's "trial strategy was reasonable and that his reliance on cross examination to test the Commonwealth's case and to prove or disprove the inoperability of the firearm was also reasonable and appropriate." *Id.*

Appellant has not cited any cases in support of his contention that expert testimony is required to identify an object as a firearm for the purposes of establishing a violation of 18 Pa.C.S. § 6105(a)(1). To the contrary, this Court has held that lay testimony alone is sufficient to establish that a defendant possessed a firearm for the purposes of 18 Pa.C.S. § 6106. *See Robinson*, 817 A.2d at 1161-62. On this record, we agree with the trial court that expert testimony is not required to prove an object is a firearm to support Appellant's conviction under Section 6105. Therefore, Appellant's argument lacks merit,

- 19 -

and no relief is due. **See Washington**, 927 A.2d at 608 (counsel cannot be found to be ineffective for failing to raise a meritless claim).

Further, although trial counsel did not object to Officer Obarto's testimony about the firearm, trial counsel testified at the PCRA hearing that his strategy was to cross-examine Officer Obarto until he acknowledged that the firearm was not operable. **See** N.T. PCRA Hr'g, 8/31/20, at 13-14. Trial counsel succeeded in getting Officer Obarto to concede that the firearm was not operable, which was an element necessary to convict Appellant of carrying a firearm without a license under Section 6106. **See id.** Therefore, Appellant has not established that trial counsel's strategy lacked a reasonable basis. **See Becker**, 192 A.3d at 117.

As for trial counsel not calling a firearms expert, as stated above, expert testimony is not required to establish an object is a firearm in order to convict a defendant of persons not to possess a firearm under Section 6105. **Accord Robinson**, 817 A.2d at 1161-62. Additionally, Appellant has failed to establish that an expert witness was available who would have offered testimony to support Appellant's position. **See Chmiel**, 30 A.3d at 1143. As noted previously, trial counsel effectively cross-examined Officer Obarto and elicited testimony that was helpful to Appellant's case. Therefore, we conclude

that Appellant's ineffectiveness claim lacks arguable merit, and he is not entitled to relief on this claim.[16] **See Washington**, 927 A.2d at 608.

### Failure to Raise Discovery Violations

Next, Appellant argues that trial counsel was ineffective for not objecting to the admission of the firearm at trial and for not requesting a mistrial because the firearm had not been provided in discovery. Appellant's Brief at 39-43. Specifically, Appellant contends that under both Pa.R.Crim.P. 573 and **Brady**, the Commonwealth was obligated to turn over the firearm for trial counsel to inspect following his request to inspect it. **Id.** at 41-42. Appellant acknowledges that the trial court may impose a variety of remedies for discovery violations. **Id.** (citing Pa.R.Crim.P. 573(E)). Appellant claims that "[a]n objection, where the Commonwealth could not provide the firearm even at the start of the trial, would undoubtedly have resulted in a ruling against the Commonwealth[,]" and therefore trial counsel lacked a reasonable basis

---

[16] We note that Appellant's contention that trial counsel did not inspect the firearm prior to trial is not supported by the record, because trial counsel stated that he had the opportunity to examine the firearm prior to trial and believed it was not functional. **See** N.T. Trial, 1/26/16, at 44-45; N.T. PCRA Hr'g, 8/31/20, at 8, 12. Further, we conclude that Appellant's argument that the PCRA court erroneously relied on trial counsel's prior employment as a Secret Service agent to excuse trial counsel's actions which lacked a reasonable basis is not supported by the record. Trial counsel explained his strategy was to elicit testimony from Officer Obarto on cross-examination that the firearm was not operable, and Officer Obarto testified to that effect. **See** N.T. PCRA Hr'g, 8/31/20, at 8, 12-14. The PCRA court concluded that trial counsel's strategy was reasonable, **see** PCRA Ct. Order, 9/25/20, at 9-11; PCRA Ct. Op. 1/4/21, at 2-3, and we agree with the PCRA court's conclusion. **See Chmiel**, 30 A.3d at 1143.

for not objecting to the firearm. *Id.* at 42. Appellant also argues that he "was undoubtedly prejudiced by trial counsel's actions, as the jury was permitted to view and consider evidence that had not properly been disclosed prior to the start of the trial, and that evidence was used to convict the Appellant." *Id.* at 43.

We have explained:

To succeed on a ***Brady*** claim, a defendant must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. The defendant carries the burden to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. Additionally, the evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

\* \* \*

***Brady*** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does ***Brady*** require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. ***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

***Sandusky***, 203 A.3d at 1061-62 (citations and quotation marks omitted).

Further, Criminal Rule of Procedure 573 provides, in relevant part:

**(B) Disclosure by the Commonwealth.**

*(1) Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

\* \* \*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

\* \* \*

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P 573(B)(1), (E).

The PCRA court did not specifically address this claim, but it concluded that trial counsel was not ineffective with respect to his trial strategy regarding the firearm. *See* PCRA Ct. Order, 9/25/20, at 9-11. Appellant acknowledges that the trial court has broad discretion in fashioning a sanction for a discovery

violation. **See** Pa.R.Crim.P 573(E). Nevertheless, Appellant presents only a bald assertion of prejudice, merely asserting that the trial court would have excluded the firearm if trial counsel had objected to the admission of the firearm on the grounds that he did not have a prior opportunity to inspect it. A bald assertion of prejudice is not sufficient to satisfy Appellant's burden to prove trial counsel was ineffective.[17] **See Sandusky**, 203 A.3d at 1044. Further, as we have discussed above, the Commonwealth may establish a defendant possessed a firearm solely with eyewitness testimony. **See Robinson**, 817 A.2d at 1161-62. Therefore, even if trial counsel had objected and the trial court had excluded the firearm as a discovery sanction, Appellant cannot show that this would have affected the outcome of his trial. For these reasons, he is not entitled to relief. **See Sandusky**, 203 A.3d at 1043-44.

### Failure to Preserve Issues for Appellate Review

Appellant next argues that "[o]ne of the secondary effects of the aforementioned instances of ineffectiveness of trial counsel is that trial counsel failed to preserve any of the evidentiary issues for appellate review; thus, prejudicing the Appellant's ability to successfully pursue a direct appeal." Appellant's Brief at 37-38. In support, Appellant refers to this Court's

---

[17] Appellant's argument that the Commonwealth did not produce the firearm for inspection is not supported by the record. **See** N.T. Trial, 1/26/16, at 42-45 (trial counsel informed the trial court he had inspected the firearm). Insofar as Appellant is arguing that trial counsel was ineffective for not objecting to the admission of the firearm at trial and for not requesting a mistrial because the Commonwealth only produced the firearm for inspection right before trial, this does not affect our analysis.

conclusion in Appellant's direct appeal that his claim of trial court error regarding Officer Obarto was waived because trial counsel did not object. **Id.** at 38-39 (citing **Bailey**, 2018 WL 4020009 at *3). Appellant concludes "[a]s evidenced by the language in the foregoing [memorandum], the Appellant's direct appeal rights were compromised by [t]rial [c]ounsel['s failure] to make appropriate objections to preserve the issues for appellate review on direct appeal." **Id.** at 39.

The PCRA court did not specifically address this claim. However, our review confirms that, aside from the claim related to Officer Obarto's opinion testimony, which we have discussed herein, Appellant fails to identify any meritorious issues that could have been appealed but were waived due to trial counsel's ineffectiveness. Accordingly, Appellant has waived this argument. **See Commonwealth v. Murchinson**, 899 A.2d 1159, 1162 (Pa. Super. 2006) (finding the appellant's claims waived under Pa.R.A.P. 2119(a) because he did not develop meaningful argument with specific references to relevant case law and to the record to support his claims). Even if his arguments were not waived, Appellant has offered only bald assertions that trial counsel lacked a reasonable basis for his actions and that he was prejudiced as a result. Therefore, no relief is due. **See Sandusky**, 203 A.3d at 1044.

## Cumulative Prejudice

Lastly, Appellant argues that the cumulative prejudice from trial counsel's errors deprived him of a fair trial and precluded him from raising these issues on his direct appeal. Appellant's Brief at 52-53.

Our Supreme Court has explained:

It is well settled that no number of failed claims may collectively warrant relief if they fail to do so individually. Accordingly, where claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. However, when the failure of individual claims is grounded in lack of prejudice, the cumulative prejudice from those individual claims may properly be assessed.

*Commonwealth v. Bomar*, 104 A.3d 1179, 1216 (Pa. 2014) (citations omitted and formatting altered).

Here, the PCRA court did not specifically address Appellant's claim of cumulative prejudice, although it did address Appellant's claims of prejudice individually as discussed herein. We agree with the PCRA court's conclusion that Appellant's ineffectiveness claims lacked merit for failure to prove prejudice, including the allegation that trial counsel was ineffective for not investigating Goldsberry's criminal history and not impeaching her with a prior *crimen falsi* conviction; and that trial counsel was ineffective for not raising a *Brady* objection regarding the Commonwealth's failure to make the firearm available for pre-trial inspection. Accordingly, for the reasons stated herein, we conclude that Appellant did not suffer cumulative prejudice from trial counsel's omissions with respect to his claims and no relief is due. *See Bomar*, 104 A.3d at 1216.

## Conclusion

For the reasons set forth herein, we conclude that there was no error of law in the PCRA court dismissing Appellant's PCRA petition. *See Sandusky*, 203 A.3d at 1043-44. Accordingly, we affirm the PCRA court's order.

- 26 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2021